THE GREAT ISLAND HOLDING CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WILLIAM ZIEGLER, JR., AND HELEN M. ZIEGLER, PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3334, 2449.  Promulgated May 31, 1945.

*Warren W. Cunningham, Esq.*, for the petitioners.
*James C. Maddox, Esq.*, for the respondent.

ARUNDELL, *Judge*:  The respondent has determined deficiencies in income tax and personal holding company surtax against petitioners, as follows:

| | Docket No. | Year | Income tax | Personal holding company surtax |
|---|---|---|---|---|
| Great Island Holding Corporation | 3334 | Oct. 1, 1937 to Sept. 30, 1938. | $9,680.72 | $50,748.27 |
| William Ziegler, Jr., and Helen M. Ziegler | 3449 | 1938 | 31,821.54 | |

The cases were consolidated for trial.

The issues presented in the case of the Great Island Holding Corporation are (1) whether a reasonable allowance for salaries of officers and employees exceeds $5,000; (2) (a) whether New York franchise tax accrued on November 1, 1937, so that the amount thereof is deductible in the taxable year; and (b) whether a deduction is allowable for interest paid for the taxable year on the New York franchise taxes.

The issue presented in Docket No. 3449 is whether Ziegler is entitled to a deduction under section 23 of the Revenue Act of 1938 for a pay-

ment in the amount of $160,000 made by him for the purpose of settling by compromise a threatened suit against him for mismanagement of a corporation of which he was president and executive head. A second question is to be settled by agreement of the parties.

### Great Island Holding Corporation.

#### ISSUE I.—ALLOWANCE OF SALARY DEDUCTIONS.

##### FINDINGS OF FACT.

Petitioner in Docket No. 3334 is the Great Island Holding Corporation, a Delaware corporation with its principal place of business in New York City. William Ziegler, Jr., owns 80 percent of its capital stock and the balance is owned by his wife Helen. During the taxable year it was primarily an investment and management company. It maintained a staff of people, specialists and clerical, whose duty it was to follow closely the operations and affairs of various corporations and enterprises whose capital stock was owned entirely by the petitioner and of other companies in which petitioner had an investment, for the purpose of ascertaining whether the particular investment would be a paying or a losing proposition and whether and how an investment could be made profitable if the given company was then in financial straits. It was their duty to recommend the sale, disposition, or liquidation of assets or securities owned by petitioner. In addition, they would investigate various business projects which represented potential investment fields for the petitioner and would turn up data and recommendations upon which a determination to invest or not to invest could be predicated.

Petitioner's books were kept on an accrual basis. Its income and excess profits tax return and its personal holding company surtax return were filed with the collector for the third New York district.

Petitioner's assets consisted principally of securities having an aggregate approximate value of $13,479,429.40. Its liabilities amounted to approximately $306,055.02. The gross income for the taxable year amounted to about $382,390, of which $73,129.61 was interest and $309,596 represented dividends received. A substantial portion of its dividends was received from the following five companies: American-Maize Products Co., Kennecott Copper, Standard Brands, Huttig Manufacturing Co., and Chesapeake Corporation.

During the taxable year the petitioner took the following approximate deductions:

| | | | |
|---|---|---|---|
| Officers' salaries | $94,000 | Interest | $ 6,300 |
| Directors' fees | 400 | Taxes | 5,000 |
| Rent | 12,500 | Lawyers' fees | 21,800 |
| Office expenses | 6,700 | | |
| Worthless stock and bad debts | 60,500 | Total | 207,200 |

Petitioner owned all of the stock of the 31 West 51st Street Corporation, whose sole asset was a house on 51st Street. It owned all of the stock of One East 46th Street, Inc., which held title to a leasehold on certain property. The records for both of the above corporations were maintained by the petitioner without charge. These corporations had been established by petitioner for the sole purpose of holding title or leasehold title to the respective properties. They had no business activity and very little time, if any, was required for their direction and operation. All of the stock of Huttig Manufacturing Co., which operated a sash and door plant at Muscatine, Iowa, where all of its officers except its president were located, was owned by the petitioner corporation. The operations of this corporation were entirely independent of petitioner and were completely at its own expense.

The petitioner and its stockholders held voting control in the American-Maize Products Co., which operated its business independent of petitioner.

The Park Avenue Operating Co., hereinafter referred to as Park Avenue, owned some real estate, held leaseholds on some real estate, and owned some few securities. Its accrued gross income during the taxable year totaled approximately $302,000, of which $284,000 represented rents collected for the use of property owned or held by it under leasehold. During the taxable year it operated at a loss of approximately $133,000. It collected rents and dividends, paid rents and interest, and liquidated some of its assets. Eighty percent of the common stock of Park Avenue was owned by petitioner. Its offices were located in the same building with petitioner. It kept its books of account on an accrual basis.

The Southworth Management Corporation was a subsidiary of the Park Avenue Corporation and managed a hotel at 31 West 51st Street which was owned by Park Avenue. This company had its own staff and conducted its operations entirely apart from the petitioner and at its own expense.

William Ziegler, Jr., was president of the petitioner and also Park Avenue. During the taxable year he devoted a substantial amount of his time to the direction and management of Park Avenue. He received no salary from that company, nor did he receive any salary during the taxable year from petitioner. Ziegler was also engaged in the business of breeding racing horses. He maintained his office in those of the petitioner and some of his personal affairs were attended to there. The elected and appointed officers of petitioner and Park Avenue were as follows:

| | Great Island Holding Corporation | Park Avenue |
|---|---|---|
| *Elected* | | |
| President | William Ziegler | William Ziegler. |
| Vice president | Donald K. David | Donald K. David. |
| Vice president | Theo. Sander, Jr | Theo. Sander, Jr. |
| Secretary | W. W. Cunningham | W. W. Cunningham. |
| Treasurer | Theo. Sander, Jr | Theo. Sander, Jr. |
| *Appointed* | | |
| Asst. secretary | | A. R. Hampton. |
| Auditor and chief accountant | A. R. Hampton | |
| Asst. treasurer | | A. H. Gieg. |
| Office manager and cashier | A. H. Gieg | |
| Asst. secretary | Miss F. M. Scudder | Miss F. M. Scudder. |

The members of the board of directors of petitioner and Park Avenue were the same. They were Ziegler, David, Sander, Cunningham, Donham, and Biddle.

The salaries paid by petitioner during the taxable year amounted to a total of $94,091.34. There was a total of 27 employees, consisting of executives, consultants, minor officials, and a clerical staff. Petitioner deducted the above amount in computing its income tax return. The respondent disallowed all of the deduction in excess of $5,000. The salaries or compensation which petitioner claimed as deductions and the salaries paid by Park Avenue are as follows:

| | Great Island Holding Corporation | Park Avenue | | Great Island Holding Corporation | Park Avenue |
|---|---|---|---|---|---|
| Donald K. David | $17,500.00 | | G. Bain | $2,086.66 | |
| Theodore Sander, Jr | 25,000.00 | | B. E. Alter | 191.67 | $2,416.66 |
| Wallace B. Donham | 5,000.00 | | E. N. Copeland | 115.00 | 1,450.00 |
| Clinton P. Biddle | 2,625.00 | | A. C. Heldman | 2,608.34 | |
| A. R. Hampton | 7,500.00 | | E. J. Herrmann | 1,695.41 | |
| A. W. Warner | 1,500.00 | $10,000.00 | N. C. Hickey | 1,565.00 | |
| A. H. Gieg | 7,500.00 | | L. M. Kiel | 191.66 | 2,416.67 |
| H. R. Rieger | 6,000.00 | | V. Mareck | 459.67 | |
| R. A. Hadden | 1,000.00 | 5,000.00 | Lee Olsen | 620.66 | |
| Paul deB. Washburn | 1,166.67 | 5,833.33 | G. Olsen | 99.67 | 1,257.67 |
| F. K. Sanders, Jr | 1,250.00 | 6,250.00 | A. Olsen | 1,356.34 | |
| B. K. MacLaury | 1,000.00 | | W. Schlueter | 1,578.75 | |
| Miss F. M. Scudder | 4,000.00 | | | | |
| R. H. Horn | 395.84 | 4,354.16 | | 94,091.34 | 40,457.49 |
| N. M. Butler | 85.00 | 1,480.00 | | | |

The respondent did not allocate among the 27 employees the $5,000 which he had allowed as a deduction, nor did he allocate to the several associated companies as deductions any part of the salaries disallowed by him.

Donald K. David is the vice president of the petitioner and also of Park Avenue, and he was president of the American-Maize Products Co. David was an investment marketing specialist who rendered valuable service to the petitioner during the taxable year. For this service the petitioner paid him a total of $17,500. In addition to that sum, he received a salary of $60,000 as president of the American-Maize Products Co., and the balance of his total salary, in the aggregate of $110,170, he received as compensation for services rendered in other capacities, to employers other than the petitioner or corpora-

tions here considered. During the taxable year David devoted 20 percent of his time to the petitioner's activities. He assisted in the formulation of investment policies and passed upon every investment made by the petitioner. In the preceding year the Park Avenue Corporation had paid him a total of $4,187.50. During the year in question he drew no salary from that corporation.

Theodore Sander, Jr., was vice president and treasurer of petitioner, vice president and treasurer of Park Avenue, and One East 46th Street, Inc., and president of the 31 West 51st Street Corporation. He was in general charge of the office and operations of petitioner and supervised the execution of policies and the investment programs. He received no compensation from Park Avenue during the taxable year. His salary from the petitioner amounted to $25,000. In addition to that sum, he received a total of $10,104.17 from subsidiaries or affiliates of petitioner other than the Park Avenue Corporation to which he had rendered services. While a substantial part of his time was given to petitioner and to the other subsidiaries from which he received compensation, some of his time was devoted to Park Avenue. The sum of $5,000 is reasonably allocable to services rendered by him to Park Avenue.

Donham and Biddle were, respectively, the dean and assistant dean of Harvard University Business School. These gentlemen were skilled investment analysts and rendered services to petitioner in connection with its investment policies. The services were rendered to petitioner upon request and payment to them was in the nature of a retainer. During the taxable year they expended no effort in behalf of the corporations other than the petitioner. In the prior taxable year Park Avenue had paid them $937.50 and $468.75, respectively. During the year in question they received no compensation from Park Avenue.

A. R. Hampton supervised the accounting records of petitioner and its subsidiaries and prepared their tax returns. He was assistant secretary or assistant treasurer of the different companies and all of their records were kept under his supervision. The reasonable value of his services to corporations other than the petitioner was $3,000.

A. W. Warner was a real estate consultant engaged primarily in behalf of the Park Avenue Corporation. During the taxable year he rendered substantial service to the petitioner and the $1,500 paid him by petitioner is a reasonable salary for the services rendered.

A. H. Gieg was office manager and cashier for petitioner and related companies and was assistant treasurer of Park Avenue. He was in charge of cash books and records of insurance on real estate owned and real estate securing mortgages. He was custodian of securities, mortgages, notes, and other valuable papers. He received and de-

posited income. The sum of $2,000 is reasonably allocable to services rendered by him to corporations other than petitioner.

H. R. Rieger was assistant to Ziegler. He spent about one-half of his time in connection with Ziegler's race horses and the other half as a special service man to assist in the management of the various companies. The value of his services to petitioner was $1,500.

Paul DeB. Washburn and R. A. Hadden were primarily engaged for the benefit of the Park Avenue Corporation. During the taxable year each of the above men rendered valuable services to the petitioner in connection with various of its investments and investment proposals and the reasonable value of their services was $1,166.67 and $1,000, respectively, paid them by petitioner.

F. K. Sanders, Jr., was an analyst and statistician. The value of his services to the petitioner is equivalent to the $1,250 which petitioner paid him. B. K. MacLaury was a statistician who devoted at least 10 percent of his time to petitioner's activities, and his services were worth the $1,000 which petitioner paid. The balance of his salary, in the amount of $9,000, was paid by the American-Maize Co., to whom he rendered the remaining 90 percent of his time.

Miss Scudder was assistant secretary of petitioner and, in addition, was secretary to David. While she kept David's personal books and attended to his personal affairs, the services that she rendered to petitioner were reasonably worth the salary petitioner paid her.

R. H. Horn and N. M. Butler were bookkeepers. Horn was Butler's predecessor. Horn was in charge of the insurance ledger under Gieg's supervision. Schlueter and G. Olsen were junior clerks and bookkeepers.

G. Bain was secretary and stenographer to Theodore Sander, Jr., and E. H. Herrmann was secretary to Hampton and did all of the stenographic work for the accounting department. Miss Kiel was secretary to Washburn, Warner, and Sanders. A. C. Heldman was a stenographer, clerk, and recorder.

Miss Copeland was a receptionist in the outer office. Miss N. C. Hickey was a telephone operator. The telephone was used by petitioner and by its subsidiaries, as well as by Ziegler in his personal affairs. V. Mareck, Lee, and G. Olsen were office boys.

The petitioner is entitled to a deduction of the amount claimed by it less the sum of $14,500.

### OPINION.

The issue in respect of the salaries in question is somewhat unusual. It is not suggested that any of the salaries were excessive in any way, nor that such payments were distributions of profits in the guise of salaries. The only problem is whether the salaries paid were for services rendered to petitioner or for services rendered to related interests.

From the evidence it is at once apparent that the Commissioner's disallowance of the whole sum in excess of $5,000 was unwarranted. The only evidence bearing on the disputed issue was produced by petitioner. This evidence leads us to the view that, in the main, the amounts paid by the petitioner were fair and in accordance with the services actually rendered to it by the respective officers and employees. We do find, however, that several adjustments hereinafter treated specifically, should be made. We are not disposed to attempt any reallocation as regards the clerical employees and minor officers of the company, for we are not able to find that the salaries paid them by the petitioner corporation were in any way excessive or were not paid for services actually rendered.

Theodore Sander, Jr., Gieg, and Hampton all received their total compensation from the petitioner. The record indicates that during the taxable year a portion of Sanders' services was devoted to the Park Avenue Corporation and we have concluded that $5,000 of his salary should be disallowed as a deduction to petitioner. Gieg also appears to have performed services for Park Avenue and for the benefit of some of the other less important corporations. We conclude that $2,000 of the sum paid him by petitioner should be disallowed. Hampton was the chief accounting officer, and was assistant secretary or treasurer for various of the companies. The accounts of the companies were kept under his direction. We think that $3,000 of his salary is properly chargeable to companies other than petitioner and accordingly deduction of that amount should be disallowed.

Rieger was the personal secretary to Ziegler and spent half of his time in connection with Ziegler's race horse activities. Ziegler, during the taxable year, devoted a substantial part of his time to the management of Park Avenue. We conclude that the sum of $4,500 of the salary in the amount of $6,000 paid Rieger by the petitioner is attributable to services in connection with the racing activities and with the Park Avenue Corporation. Accordingly, that sum is not an allowable deduction to the petitioner.

## ISSUE II.—DEDUCTION OF FRANCHISE TAX.

### FINDINGS OF FACT.

The facts with respect to the New York franchise tax issue are stipulated, and they are found as stipulated. In 1940 a representative of the special investigations bureau of the New York State Department of Taxation and Finance commenced an examination of petitioner's books and records to determine whether it was subject to New York state franchise tax under article 9–A of the Tax Law of the State of New York. Petitioner had filed no returns with the State of New York covering the franchise tax up to this time. It believed and contended

that it was not subject to the tax, on the ground it was not doing business in that state. The examining officer reported that the activities of petitioner within New York subjected it to the tax. Acting upon this report, the Deputy Tax Commissioner of New York, in May 1941, ruled that petitioner had been doing business in New York since the date of its incorporation, and gave petitioner an opportunity to file returns covering that period. On January 16, 1942, petitioner filed the returns, which were transmitted with a letter of protest. The letter reads, in part, as follows:

> On behalf of the Great Island Holding Corporation, in response to your demand and to avoid the assessment of taxes and penalties in arbitrary amounts, but under protest, I hand you herewith * * * forms as follows: * * *
>
> * * * * * * *
>
> The protest is based on the ground that under the law no returns ought to be required from this Corporation and no New York state franchise tax is payable by it.

On June 30, 1942, a conference was held between the deputy commissioner and representatives of petitioner, at which conference the deputy commissioner made the following rulings:

> (a) The Great Island Holding Corporation did not commence to do business in New York State until November 1, 1930—thus eliminating any liability for taxation under Article 9–A between the date of its incorporation, March 5, 1929 and November 1, 1930.
>
> (b) The Great Island Holding Corporation was doing business within the State of New York during each of the tax years from and after November 1, 1930.
>
> (c) He refused to accept the valuation of the stock of The Park Avenue Operating Company owned by The Great Island Holding Corporation on the basis set forth in the returns, but he prescribed a formula under the application of which the valuation would be, roughly, midway between the basis of the book value and the basis of the value shown on the returns.
>
> (d) He allowed losses sustained by The Great Island Holding Corporation upon the sale of stock of The Park Avenue Operating Company and upon the foreclosure of its lien on the securities of Huttig Manufacturing Company.
>
> (e) If the taxes as finally determined were paid, all penalties would be waived and interest would be computed on the basis of 4% per annum; if the taxes were not paid, full penalties and interest would be exacted.

The tax and interest liability was computed on October 27, 1942, and was paid on December 30, 1942. In due course receipts were received from the New York State Department of Taxation and Finance for the taxes under article 9–A of the tax law (one receipt for each tax year) all running to the Great Island Holding Corporation, and each receipt read, so far as pertinent, as follows:

Tax year beginning Nov. 1, 1930, one mill on capital stock_____ $17, 688. 45
Interest _____ 8, 372. 53

26, 060. 98

| | |
|---|---|
| Tax year beginning Nov. 1, 1931, one mill on capital stock_____ | $10, 196. 11 |
| Interest_____ | 4, 418. 31 |
| | 14, 614. 42 |
| Tax year beginning Nov. 1, 1932, 4¼ percent on net income_____ | 7, 259. 44 |
| Interest_____ | 2, 855. 38 |
| | 10, 114. 82 |
| Tax year beginning Nov. 1, 1933, one mill on capital stock_____ | 8, 306. 80 |
| Interest _____ | 2, 935. 07 |
| | 11, 241. 87 |
| Tax year beginning Nov. 1, 1934, 4½ percent on net income_____ | 18, 346. 67 |
| Interest_____ | 5, 748. 62 |
| | 24, 095. 29 |
| Tax year beginning Nov. 1, 1935, one mill on capital stock_____ | 7, 705. 22 |
| Interest _____ | 2, 106. 10 |
| | 9, 811. 32 |
| Tax year beginning Nov. 1, 1936, one mill on capital stock_____ | 6, 935. 39 |
| Interest _____ | 1, 618. 26 |
| | 8, 553. 65 |
| Tax year beginning Nov. 1, 1937, one mill on capital stock_____ | 8, 300. 99 |
| Interest _____ | 1, 604. 86 |
| | 9, 905. 85 |
| Tax year beginning Nov. 1, 1938, one mill on capital stock_____ | 6, 840. 01 |
| Interest _____ | 1, 048. 80 |
| | 7, 888. 81 |
| Tax year beginning Nov. 1, 1939, 6 percent on net income_____ | 10, 404. 00 |
| Interest _____ | 1, 179. 12 |
| | 11, 583. 12 |
| Tax year beginning Nov. 1, 1940, 6 percent on net income_____ | 9, 088. 07 |
| Interest _____ | 666. 46 |
| | 9, 754. 53 |

| | |
|---|---:|
| Tax year beginning Nov. 1, 1941, 6 percent on net income_____ | $9,076.76 |
| Interest _____ | 302.56 |
| | 9,379.32 |
| Tax year beginning Nov. 1, 1942, 6 percent on net income_____ | 9,805.86 |
| Total_____ | 162,809.84 |

The Deputy Commissioner wished the payments to be made in advance of the technical assessments, as it would simplify his office procedure. The assessments were made after the payments.

None of these taxes nor the interest thereon was accrued on petitioner's books during or prior to the taxable year here in question. They were entered on petitioner's books in December 1942 when paid. None of the tax as thus computed for the franchise tax, commencing November 1, 1937, has been allowed as a deduction in computing petitioner's tax liability for the fiscal year ended September 30, 1938. None of the interest computable on franchise taxes for the years prior to the tax year beginning November 1, 1938, has been allowed as a deduction in computing petitioner's tax liability for the fiscal year ended September 30, 1938.

OPINION.

The petitioner takes the view that the franchise tax for the taxable year 1937 and the interest on the franchise taxes for that and prior years actually accrued as liabilities in 1937, and that it is entitled to deduct those items in that year, although at the time it denied any liability for the tax and did not accrue on its books the liability until the tax was paid in 1942.

It is conceded by the parties that the issue is to be governed by the decision in *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516, if it be determined as a fact that petitioner was contesting his liability for such taxes. The above decision holds that, where an accrual basis taxpayer contests liability, no amount for the taxes can be accrued until the question has been settled. Petitioner argues that the rule of the case applies only to contests in the nature of legal proceedings after the date of the actual tax assessments, and that it is not applicable to the situation where a taxpayer does not become involved in litigation in resisting the tax.

The record discloses that the petitioner consistently denied liability for the franchise taxes from the time it commenced business operations in 1929, and even when it filed franchise tax returns in 1942 it did so under protest. It did not accrue on its books any amount of franchise taxes for any of those years, but stood steadfastly by its position that it was not doing business within the State of New York.

Petitioner also contended that in any event the amount of its income tax liability determined by the State of New York was excessive.

We do not agree with petitioner's contention that the "contested tax" rule is applicable only in cases where the dispute has been carried to the courts. In our view, it is sufficient if the taxpayer does not accrue the items on its books and denies its liability therefor. The rule is well settled that taxes accrue when all events have occurred that fix the amount of the tax and determine the liability to pay it. *United States* v. *Anderson*, 269 U. S. 422; *Burton-Sutton Oil Co.*, 3 T. C. 1187; *Oregon Pulp & Paper Co.*, 47 B. T. A. 772. It seems apparent that under the circumstances here the events fixing the amount of the tax and the liability to pay it occurred long after the taxable year. Accordingly, we hold that the petitioner is not entitled to deduct the items in question in the taxable year.

### *William Ziegler, Jr., and Helen M. Ziegler.*

#### FINDINGS OF FACT.

Petitioners are husband and wife and residents of New York. They filed a joint Federal income tax return for the calendar year 1938 with the collector of internal revenue for the third district of New York.

Since the principal issue pertains to a transaction involving solely William Ziegler, Jr., he will be referred to hereinafter as petitioner.

On October 1, 1926, petitioner executed two trusts, one for each of his two daughters, transferring to himself as trustee 5,000 shares of preferred capital stock of Park Avenue for each trust. On June 4, 1928, petitioner executed a document clarifying and confirming the declaration of trusts dated October 1, 1926, and at the same time executed two additional trusts for the two daughters, transferring to himself as trustee an additional 5,000 shares of preferred capital stock of Park Avenue for each trust. The reasonable value of the 20,000 shares of stock at the time of their transfers was $100 per share, or a total of $2,000,000. There were no other shares of preferred stock of Park Avenue than the 20,000 shares transferred to the four trusts. Petitioner controlled the management and affairs of Park Avenue through the ownership of the majority of its common stock directly or through a personal holding corporation.

The beneficiaries of the trusts, Barbara Ziegler and Elizabeth Virginia Ziegler, were the children of petitioner by a former wife, Gladys Watson Ziegler, from whom he was divorced on October 29, 1926. Petitioners were married in January 1927, and there are two children of that marriage.

Prior to June 8, 1934, Park Avenue sustained serious losses and the value of its preferred stock became substantially impaired. No

dividends were declared or paid thereon for any period subsequent to 1931. Petitioner's former wife retained an attorney to advise her with respect to her childrens' interests in the trusts. A demand was made on petitioner to resign as trustee and a bank was to be appointed in his place, so that the trustee would have no adverse financial interest in Park Avenue. Petitioner accounted in the Supreme Court, New York County, as trustee, was permitted to resign, and the Bankers Trust Co. of New York was appointed successor trustee. The judgment of the Supreme Court by which the accounts of petitioner as trustee were settled and allowed was rendered on September 6, 1934. Park Avenue continued to sustain losses and the value of its preferred stock continued to decline.

In 1936 Mrs. Ziegler engaged another attorney, David W. Peck, who replaced her former attorney, to advise her on behalf of her children what, if any, claims might be asserted against petitioner, based on his alleged mismanagement of Park Avenue and on the losses which had been sustained with respect to the value of its pre ferred stock held by the trusts. Elizabeth Virginia Ziegler, having become of age, called on her father, had some words with him, and wanted to know what had become of her million dollars. She then retained an attorney to represent her. Negotiations were carried on between the attorneys representing the respective interests, during which large claims were asserted against petitioner, based on mismanagement of Park Avenue. Petitioner made several proposals with respect to changing the trust property, but none was acceptable, until January 1938, at which time the Bankers Trust Co., as trustee, and petitioner entered into an agreement in which petitioner agreed to purchase the Park Avenue preferred stock, held in the trusts, at the purchase price of $300,000, and to pay the trustee $100,000 in settlement of the claims asserted against him personally. The agreement was to become effective only after approval of the Supreme Court of New York. On January 21, 1938, the trustee, by petition, presented the agreement to the court and requested instructions with respect to carrying out the provisions of the agreement.

The court appointed David W. Peck as special guardian of Barbara Ziegler, a minor beneficiary, George Z. Medalie as special guardian of Melinda Pierson, daughter of Elizabeth Virginia Ziegler, who had married one Pierson, and also unborn infants who may ultimately have an interest in the trust, and by order dated April 14, 1938, referred the proceeding to George Frankenthaler as referee to take testimony and report as to whether the agreement should be concluded by the trustee. Several hundred pages of testimony were taken at the hearings before the referee in reference to the value of the preferred stock of Park Avenue and with regard to various acts of mismanagement alleged to have been committed by petitioner.

Two special guardians and the attorney for Elizabeth Virginia Ziegler Pierson opposed conclusion of the agreement by the trustees, and they were unwilling to settle the proposed suit for the $100,000 offered. During the course of the hearings negotiations were conducted between the special guardians and attorneys, the result of which was an offer by petitioner to compromise the claim asserted against him for the amount of $160,000, a raise of $60,000 over his previous offer, and the payment of $300,000 for the stock. This was accepted by the opposing parties and the hearings before the referee were closed. The referee submittd his report on August 21, 1938, to the court and recommended that petitioner's offer to purchase the stock for $300,000 and to pay $160,000 in compromise of the claims be accepted. The court adopted the referee's report by an order duly made on September 13, 1938. The matter was finally disposed of on October 6, 1938, when the Great Island Holding Corporation gave the trustee its check in the amount of $300,000 in full purchase price of the shares of preferred stock held by the trusts and by a payment of $160,000 to the trustee by the petitioner Ziegler personally in full settlement of the claim of mismanagement which had been asserted against him. The petitioner settled the claim for mismanagement solely for the purpose of avoiding extended litigation and to avoid the possibility of a judgment against him in a greater amount. The $300,000 paid for the shares of Park Avenue was the top value of the stock at that time. Releases from any liability for mismanagement were given by the trustee and Elizabeth Pierson to petitioner and the other officers and directors of Park Avenue.

Petitioner was the president and director of Park Avenue and he devoted a considerable part of his time to the affairs of that corporation. The sum of $160,000 paid in compromise of the claim asserted against petitioner Ziegler was incurred by him in the conduct of his business as executive officer, director, and majority stockholder of Park Avenue.

Petitioners claimed a deduction in their return of $160,000 concerning this item and respondent disallowed the same.

### OPINION.

The respondent argues that the claim of mismanagement was without basis, and that the entire payment of $460,000 represented the actual value of the preferred shares and was the sum, in fact, paid to the trust for the shares. We have found as a fact, however, that the top value of the preferred shares of the Park Avenue Corporation at the time of the sale was $300,000, and in our opinion the evidence amply supports this finding. That is the sum actually paid by the Great Island Holding Corporation for the shares and we find no basis in the record for substituting some other figure.

We think the evidence clearly establishes that the payment of $160,-000 was made to compromise a bona fide claim charging mismanagement by petitioner Ziegler in the conduct of the affairs of the Park Avenue Corporation. The settlement of the claim, as well as the sale of the shares of preferred stock constituting the corpora of the trusts, was given approval by the Supreme Court of the State of New York. The claim had been vigorously pressed in good faith by eminent lawyers of the highest standing, representing the trustee and the beneficiaries of the trust. It was resisted by the petitioner and was compromised by him only upon the advice of his counsel. Between the years 1928 and 1938 the net worth of Park Avenue had declined from approximately $10,000,000 to less than $1,000,000. It is apparent that when the net worth of the company went below $2,000,000 speculative losses thereafter incurred were at the risk of the preferred shareholders and not at the risk of the holders of the common stock who were managing the business enterprise. Inherent in that situation was the question of whether the petitioner, as the executive head of the corporation, exercised the proper degree of care and judgment in conducting the operations of the corporation for the benefit of the preferred holders, or whether he sacrificed their interests in an endeavor to recoup the losses by entering into highly speculative ventures which would, if realized, provide a value for the common shares. Counsel for the beneficiaries of the trusts conducted investigations of the operations of the Park Avenue Corporation over the years and at least some of them were satisfied from the evidence they were able to uncover that a suit for mismanagement might be successfully prosecuted by the trustee. While it may be true that if a charge of mismanagement had been asserted against petitioner Ziegler in a court proceeding he could have successfully defended himself against it and thus escaped liability, the fact remains that there was no lack of *bona fides* in the situation and an adjudication of the controversy may well have resulted in a substantial judgment against him.

We do not doubt that the payment in question is one for which the petitioner is entitled to a deduction under section 23 of the Revenue Act of 1938. Whether the deduction be characterized as an ordinary and necessary business expense or as a loss incurred in his trade or business is of little moment here, for the payment is obviously one or the other and the result is the same. See *Bishop Trust Co., Ltd.*, 47 B. T. A. 737; *John Abbott*, 38 B. T. A. 1290. The controversy amounted to a demand by the preferred shareholders for damages against the principal officer of the corporation for alleged mismanagement of corporate affairs. The payment was directly connected with and proximately resulted from petitioner's business activity. *Kornhauser* v. *United States*, 276 U. S. 145; *Commissioner* v. *Heininger*, 320 U. S. 467. The claimed deduction does not come within the purview of

the rule respecting penalties, deductions of which are disallowed by reason of the fact that their allowance would mitigate the degree of punishment and frustrate the purpose and effectiveness of public policy. *Commissioner* v. *Longhorn Portland Cement Co.*, 148 Fed. (2d) 276 (C. C. A., 5th Cir.), reversing 3 T. C. 310, on the ground that the suits there in question were for the purpose of imposing statutory penalties. See *Commissioner* v. *Heininger, supra.*

In the circumstances, we conclude that the sum of $160,000 paid out by petitioner in compromise settlement of a bona fide dispute represents an item for which he is entitled to a deduction under the provisions of section 23. See *H. M. Howard*, 22 B. T. A. 375; *Robert S. Farrell*, 44 B. T. A. 238; *Commissioner* v. *People's-Pittsburgh Trust Co.*, 60 Fed. (2d) 187; *Foss* v. *Commissioner*, 75 Fed. (2d) 326; *Mrs. A. B. Hurt*, 30 B. T. A. 653.

We find no merit in the respondent's argument that the petitioner had a substantial interest in the trust funds, nor can we conclude that the petitioner received any measurable benefit from the agreement by his daughter Elizabeth not to contest his will or that any part of the payment was made in exchange for such an agreement.

### Issue II.

In his deficiency notice the respondent determined that there should be included in petitioner's taxable income the sum of $16,238.93 representing additional dividends from the Great Island Holding Corporation. The parties have stipulated that the amount of the distributions made by the corporation or the amount of its earnings or profits for the taxable year ended September 30, 1938, whichever is less, is the amount to be included in petitioner's gross income as dividends from that corporation.

The determination of the problem is thus dependent upon the outcome of the controversy in Docket No. 3334, as determined in those proceedings. The stipulation will be given effect in a computation of petitioner's income tax liability under Rule 50.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: I am not convinced that it was an ordinary and necessary expense of a business regularly carried on by Ziegler to pay $160,000 to his daughters because he was accused of mismanaging the affairs of the corporation.

LEECH and MELLOTT, *JJ.*, agree with the above.