LAURENCE M. MARKS AND MARJORIE G. MARKS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59551.   Filed December 10, 1956.

*Victor S. Trygstad, Esq.*, for the petitioners.
*Charles B. Markham, Esq.*, for the respondent.

#### OPINION.

RAUM, *Judge:* Respondent has determined a deficiency in the income tax of petitioners for the calendar year 1950 in the amount of $14,806.23. The sole issue is whether respondent erred in determining that a payment by petitioner Laurence M. Marks to Shamrock Oil and Gas Corporation in 1950 in the amount of $17,672.08 was not deductible.

All of the facts have been stipulated and are so found.

Petitioners are husband and wife, and reside in New York City. Their joint income tax return for the calendar year 1950 was filed with the then collector of internal revenue for the second district of New York, in New York City. Marjorie G. Marks is a party to this proceeding solely because of the filing of a joint return for that year and Laurence M. Marks will hereinafter be referred to as the petitioner.

Petitioner has been an investment banker for over 40 years, and for over 20 years the senior partner in Laurence M. Marks & Company (hereinafter called the firm), an investment banking company engaged in the business of underwriting and dealing in securities. He has at all times relevant been a director of a number of corporations the securities of which are listed on the New York Stock Exchange. Since 1945 he has continuously been a director of Shamrock Oil

and Gas Corporation (hereinafter called Shamrock). The firm has dealt in and distributed stock of Shamrock in the normal course of business since Shamrock's first public offering in 1944.

Shortly prior to December 12, 1947, a special offering of Shamrock stock had been made on the floor of the stock exchange. This offering was unsuccessful, and 14,800 shares remained unsold. In order to avoid an unfavorable effect upon the value of Shamrock stock in the market, the firm purchased the foregoing shares on December 12, 1947. It finally disposed of them, but such disposition required some time due to unfavorable market conditions. On January 19, 1948, the firm still had on hand 7,510 of those shares.

At some undisclosed time the firm bid for and purchased 4,500 shares of Shamrock from Investors Mutual Trust. A part of those shares was retailed to customers and other shares were sold in the stock exchange.

At some undisclosed time an underwriting group headed by the First Boston Corporation was formed to dispose of 163,303 shares of Shamrock, representing the entire amount of such shares then still held by Phillips Petroleum Company. The firm participated to the extent of 10,000 shares. Petitioner did not desire to participate, but feared that a refusal on his part would prejudice the success of the issue. Of the 10,000 shares taken by the firm 4,390 were sold to customers, 3,110 were sold to brokers, and 2,500 were returned for dealers' sales.

General Public Service Company, a good customer of the firm, desired to dispose of 5,000 shares of Shamrock stock. The market for Shamrock stock was thin at that time. As a result the firm made a bid which was accepted. It purchased the foregoing shares on September 27, 1948. Several months were required for an orderly disposition thereof.

The foregoing transactions were normal business activities of the firm. Neither petitioner nor the firm initiated the negotiations leading thereto. Purchases and sales of Shamrock stock were reported pursuant to section 16 (a) of the Securties Exchange Act of 1934. Reports were made to the Securities and Exchange Commission, the New York Stock Exchange, and the Pittsburgh Stock Exchange.

During 1948 and 1949 the firm realized a gross profit in the amount of $45,313.05 from the foregoing plus a few miscellaneous transactions in Shamrock stock. That profit was reported as ordinary income by the firm. Petitioner, in reporting his share of partnership profits in 1948 and 1949, included his share of gross profits realized in the Shamrock transactions, which amounted to $17,672.08.

Thereafter, the Securities and Exchange Commission indicated to Shamrock that in its opinion Shamrock appeared to have the right under section 16 (b) of the Securities Exchange Act of 1934 to recover

from petitioner his share of the profit realized as a result of the foregoing transactions. Shamrock informed petitioner of this. Petitioner consulted his attorney, and was advised that there was substantial doubt whether Shamrock had any such right.

Shamrock retained legal counsel to advise it in this matter. It recognized that the transactions in question were in the normal course of the firm's business, and were bona fide and ethical on the part of petitioner. Shamrock was advised by its attorney that while no case had determined whether a partnership with a member of the type described in section 16 (b), or such partner, was liable thereunder, the Securities and Exchange Commission did consider such partnership subject to that section. It was further advised that of the several transactions, those involving the 14,800 shares and the 10,000 shares from Phillips Petroleum Company were probably within the spirit of an exemption provided by a rule of the Commission. However, there was substantial doubt as to the entire matter, and as to whether there had been any violation at all.

Petitioner and the other directors of Shamrock agreed that avoidance of litigation was in the best interest of all concerned. They determined that $17,672.08 was the maximum amount which Shamrock could recover under any interpretation of the transactions in connection with section 16 (b), and petitioner paid that amount to Shamrock in March 1950.

In 1952 the Securities and Exchange Commission broadened its rule respecting exemptions from section 16 (b). It was thereafter clear that the transactions involving the foregoing 14,800 shares and 10,000 shares, respectively, were exempt. The gross profit realized in respect of those two transactions was in the amount of $30,156.39. Petitioner's share thereof was in the amount of $11,760.99. The other transactions set forth above were similar, differing only in the fact that other dealers were not associated with the firm in the distribution of the stock.

Petitioner has never traded or dealt in Shamrock stock for his own account while a director of that corporation. In January 1946, shortly after he became a director, he purchased 4,000 of its shares, which he still owns.

At the time that the matter of the transactions in Shamrock stock was under discussion petitioner was a vice president of the Investment Bankers Association of America. He was expected to be, and in the following year was, elected president of that organization. He has served as a governor of the New York Stock Exchange, as a governor of the National Association of Securities Dealers, Inc., and on various committees of the New York Stock Exchange, as well as on many charitable boards. He has an excellent reputation in the business and financial fields as an investment banker and director.

No determination was ever made by the Securities and Exchange Commission or by any tribunal, judicial or otherwise, that petitioner violated section 16 (b) of the Securities Exchange Act of 1934. His payment to Shamrock in the amount of $17,672.08 was a voluntary settlement, made to avoid unfavorable publicity and injury to his business reputation, and to avoid extended controversy and the expense of litigation. He has never admitted, and does not now admit, of a violation of section 16 (b). If there was such a violation, however, it was unintentional and not due to a failure to exercise reasonable care.

No part of the foregoing payment to Shamrock has been compensated for by insurance or otherwise. Petitioner deducted that amount on his return for the calendar year 1950. Respondent disallowed that deduction, resulting in the deficiency in issue here.

The sole issue in this proceeding is whether the foregoing payment constituted a deductible expenditure or loss. Petitioner claims the deduction either as a business expense pursuant to section 23 (a) of the Internal Revenue Code of 1939, or as a loss incurred in trade or business pursuant to section 23 (e) of that Code.

An analysis of the entire record convinces us that the payment in question was an ordinary and necesary expense of petitioner's trade or business as an investment banker and director, within the intendment of section 23 (a) of the Internal Revenue Code of 1939. Although the stipulation characterizes the payment as having been made "voluntarily," it can neither be properly characterized as gratuitous, nor as personal to petitioner in the nature of an expense to protect his personal reputation. There was a serious question as to whether he was in fact liable under section 16 (b) of the Securities Exchange Act of 1934. At the time the payment was made it was by no means clear that Shamrock could not have recovered the amount paid had it attempted to litigate the matter. The payment was in satisfaction of a bona fide possible cause of action, arising out of petitioner's trade or business, and was by no means "voluntary" in the sense of being gratuitous or without a valuable consideration.

Expenditures incurred by a taxpayer to protect his business reputation or avoid unfavorable business or commercial publicity have been regarded as deductible. *Helvering* v. *Community Bond & Mortgage Corporation*, 74 F. 2d 727 (C. A. 2) ; *Paul Draper*, 26 T. C. 201; *William L. Butler*, 17 T. C. 675; *International Shoe Co.*, 38 B. T. A. 81.

We are satisfied that to the extent that the payment in question was made to protect petitioner's reputation, it was made to protect his business rather than his personal reputation, and to avoid publicity that would be unfavorable in business rather than in a personal sense. For these reasons, *Lloyd* v. *Commissioner*, 55 F. 2d 842 (C. A. 7), is not in point, since the expenses there were considered as having been

made to protect the taxpayer's personal reputation and any possible connection with his business was treated as merely "incidental."

The final point we must consider is whether the deduction in question must be disallowed for reasons of "public policy." Petitioner argues that the payment in question was not made "pursuant" to section 16(b) of the Securities Exchange Act of 1934. In our view, whether the payment was made "pursuant" to section 16(b) is a technical question that need not be resolved. The payment was in fact made as a result of a possible claim under section 16(b), and the question remains whether such payment, in the circumstances of this case, is deductible as an "ordinary and necessary" business expense under section 23(a) of the 1939 Code. There is no magic in labels, and we do not deem it necessary to decide here whether liability under section 16(b) is "penal" or "punitive" or is merely "civil" in nature, as such decision would not be determinative of the issue before us. *National Brass Works* v. *Commissioner*, 182 F. 2d 526 (C. A. 9); *Jerry Rossman Corporation* v. *Commissioner*, 175 F. 2d 711 (C. A. 2), reversing 10 T. C. 468; *Farmers Creamery Co. of Fredericksburg, Va.*, 14 T. C. 879. There is nothing in the 1939 Code which per se makes such terminology the touchstone of deductibility or nondeductibility. The issue, as we view it under the decided cases, is whether allowance of the deduction would frustrate "sharply defined public policy." *Commissioner* v. *Heininger*, 320 U. S. 467; *William L. Butler, supra*, at p. 680; *William F. Davis, Jr.*, 17 T. C. 549, 555; *Hershey Creamery Co.* v. *United States*, 101 F. Supp. 877 (Ct. Cl.). We cannot find any other ground for its disallowance, and it must therefore be allowed unless we can answer the foregoing question in the affirmative.

In the instant proceeding we cannot even say with any assurance that a violation of any law ever occurred. The Commission's 1952 amendment to its rules made clear that the two largest transactions in question did not run afoul of section 16(b), and doubt persists whether the other relevant transactions (which differ from the two major transactions only in a highly technical way) constituted a violation. Petitioner has never believed that there was any illegality. If a violation did occur it was unintentional, and not the result of lack of reasonable care on the part of petitioner or his firm.

In agreeing to the settlement in question whereby every doubt was resolved in Shamrock's favor, petitioner's principal motives were to avoid unfavorable publicity with possible injury to his excellent reputation in the business world, and to avoid the expenses which further negotiation and, possibly, litigation would bring.

We cannot conclude from the foregoing that the allowance of the deduction sought here would frustrate any sharply defined public

policy. The violation of section 16(b) in this instance, if there was in fact any such violation, was of such a nature that the allowance of the deduction would not tend to encourage further violations. Nor could its disallowance lend any support to a policy of discouraging acts violative of section 16(b). To be sure, that section evidences a policy of discouraging certain types of activity. But we must look to the acts of this petitioner, in the actual facts and circumstances of this case, to determine the effect of the allowance of the deduction in question. It is far from clear that petitioner ever acted in violation of any law or public policy. It is therefore equally unclear that allowance of the deduction sought would frustrate such policy.

Respondent places much reliance on *William F. Davis, Jr., supra.* We do not understand the rule of that case to be that if section 16 (b) of the Securities Exchange Act of 1934 is the statute pursuant to which the payment in question is made, it is ipso facto not deductible. The doctrine that a payment is denied deduction if allowance of such deduction would violate sharply defined public policy is necessarily a test of fact, and an inflexible rule based solely upon the particular provision of law involved, without regard to the surrounding facts and circumstances, would itself "frustrate" the foregoing doctrine. Such a rule would not be in harmony with *Commissioner* v. *Heininger, supra,* and we reject it. The deduction sought was denied in the *Davis* case because it was felt that under the facts there its allowance would as a matter of fact violate sharply defined public policy, the Court saying, at pages 555 and 556:

Decision that the payment * * * was in the nature of a penalty will not resolve the ultimate issue in this proceeding. The essential inquiry must be not only into the character of the payment made but also into the cognate question of whether the deduction * * * will frustrate any sharply defined public policy expressed in section 16(b) * * * and subvert the purposes of that statute. * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

Based upon our examination of the extent and nature of the liability imposed by section 16 (b) *and the application of that section to the petitioner's transactions,* we have concluded that the obligation imposed by the section is in the nature of a penalty and that allowance of its deduction *under the circumstances of this proceeding* would frustrate the public policy expressed in the section. [Emphasis supplied.]

*Robert Lehman,* 25 T. C. 629 ,was deemed indistinguishable from the *Davis* case, and hence decided upon the authority thereof.

We conclude that in the circumstances of the instant proceeding the allowance of the deduction in question would not frustrate any sharply defined public policy, either that expressed in section 16 (b) of the Securities Exchange Act of 1934, or any other. The payment may be

deducted as an ordinary and necessary business expense.   Sec. 23 (a) (1) (A), I. R. C. 1939.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

WITHEY, *J.*, concurs in the result.
HARRON, *J.*, dissents.

———

MURDOCK, *J.*, concurring: $17,672.08, representing gains from sales of the Shamrock stock, was reported by the petitioner as ordinary income in a prior year while in the taxable year this same amount, a part of the "amount realized" in those sales, was surrendered by the petitioner.   Thus in the end the petitioner had no gain from the sales and yet reported a profit in a prior year.   If he had surrendered the profit in the same year in which the sales had been made, obviously he would have had no income to report from those transactions.   Here the sales occurred in one year, the profit was returned in a later year, and a deduction must be allowed in the later year to bring the petitioner's income into balance, just as a recovery on a debt must be reported as income merely because it was previously allowed as a deduction.   The one is really not a loss and the other is really not income, but in each case the adjustment should be made in the later year.

No public policy is involved.   This is not a case where the allowance of the deduction would weaken an effective method of enforcing a sharply defined public policy by mitigating the deterrent effect of sanctions imposed by section 16 (b) of the Securities Exchange Act of 1934 through a tax advantage, as would be the case of allowing a deduction for an ordinary fine or penalty.   The petitioner merely restored the profits realized by him which he had previously reported as ordinary income.   The effect of allowing the deduction would be merely to offset the income already taxed.   The disallowance on the other hand would in substance provide an added sanction—a consequence that is plainly outside the purpose of the revenue laws.   Cf. dissents in *William F. Davis, Jr.*, 17 T. C. 549, 559, *et seq.*

The result reached in this case seems contrary to what was said and done in *Robert Lehman*, 25 T. C. 629, and *William F. Davis, supra.*

MULRONEY, *J.*, agrees with this concurring opinion.

———

ATKINS, *J.*, dissenting: In *William F. Davis, Jr.*, 17 T. C. 549, appeal to C. A. 9 dismissed October 20, 1953, which was followed in *Robert Lehman*, 25 T. C. 629, this Court held that payments made pursuant to section 16 (b) of the Securities Exchange Act of 1934 are in the nature of penalties and that they are not deductible, since the allowance of the deduction thereof would frustrate a sharply defined

public policy expressed in the Securities Exchange Act. As pointed out there, good faith, innocent transgression, or fair dealing neither excuse nor abate the statutory exaction. It was also pointed out that the payment does not constitute a restitution to the person from whom the stock was purchased or sold, or a restitution of a profit which belonged to the corporation. The view there taken that such a payment is in the nature of a penalty is supported by the decisions in the cases of *Smolowe* v. *Delendo Corporation*, (C. A. 2) 136 F. 2d 231, certiorari denied 320 U. S. 751, and *Dotenheim* v. *Emerson Electric Mfg. Co.*, (E. D., N. Y.) 7 F. R. D. 195.

I am unable to distinguish the instant case in principle from the *Davis* case. Clearly the payment herein was made pursuant to section 16 (b) even though the petitioner's principal motives were to avoid possible injury to his professional reputation and to avoid litigation expenses. Neither here nor in the *Davis* case had there been a judicial determination of liability.

PIERCE, *J.*, agrees with this dissent.