FEDERATION BANK & TRUST COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59697.    Filed March 18, 1957.

*Floyd F. Toomey, Esq., John P. Lipscomb, Jr., Esq.,* and *Alfred Rathheim, Esq.,* for the petitioner.

*Richard G. Maloney, Esq.,* and *Thomas N. Chambers, Esq.,* for the respondent.

964

**OPINION.**

MULRONEY, *Judge:* We will make a short summary of some of the foregoing facts before proceeding with a discussion of the issues. Petitioner, a banking corporation, was taken over by the Superintendent of Banks of the State of New York in 1931. It was allowed

to reopen in 1932 after having submitted and having approved a plan of reorganization which involved the raising of new money and the reduction of deposit liability.

Reduction of deposit liability is the part of the reorganization in which our problem falls. Briefly, a majority of the depositors waived one-third of their deposits amounting to $2,528,461.02. At the same time the petitioner gave such depositors participation certificates in an amount equal to the waived deposits which entitled the holders to certain rights under a trust agreement. Under this latter agreement the bank agreed to liquidate certain designated assets with a book value of $8,936,942.60 and the bank was to retain the first $5,530,036.25, plus 6 per cent interest, and the balance of the liquidation proceeds, up to the full amount of the waived deposit indebtedness, was to be turned over to a trustee for the benefit of the holders of the participation certificates. In 1942 the petitioner purchased the outstanding junior interest in the unliquidated assets for $534,125.08 and this sum was paid to the trustee and distributed pro rata to the participation certificate holders. In 1945 petitioner paid $125,000 (of the sum of $195,000) in settlement of a class action brought by the depositors against the trustee and petitioner charging mismanagement of the trust and improper accounting.

Respondent determined petitioner received income by reason of the depositors' waiving one-third of their deposits in 1932, and this income was realized in 1945, in an amount of $1,818,566.49. Respondent arrived at the amount of income by taking the full amount of the waived deposits, or $2,528,461.02, and subtracting all of the sums paid to the depositors by petitioner in the total sum of $709,894.53. As shown in the statement of facts, the depositors received $42,276.51 derived from the trusteed stock, $8,492.94 income on certain assets in excess of 6 per cent, $534,125.08 paid in 1942 in settlement of the certificate holders' junior interest, and $125,000 paid by petitioner in 1945 (out of the $195,000) in settlement of the accounting action, or a total of $709,894.53.

Respondent states in his brief the question is "simply whether the petitioner realized taxable income from the cancellation of certain deposit indebtedness and, if so, the year such cancellation was effected for income tax purposes."

It has long been recognized that a debtor may realize taxable income within the meaning of section 22 (a) of the Internal Revenue Code of 1939 by the cancellation of a debt for less than the face amount thereof. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Helvering* v. *American Chicle Co.*, 291 U. S. 426. If the debtor is insolvent when a debt is waived the amount of taxable income resulting therefrom cannot

exceed the amount by which he is rendered solvent. *Lakeland Grocery Co.*, 36 B. T. A. 289; *Texas Gas Distributing Co.*, 3 T. C. 57.

Petitioner argues, if it realized any taxable income by reason of the depositors' executing the consents and assignments, it realized it in 1932 when the assignments of one-third of the deposits were executed and delivered, or at the latest 1942 when it settled with the depositors and their junior interest in the assets was extinguished.

Respondent argues no income was realized by the assignments of deposit indebtedness in 1932 because the bank gave the depositors participation certificates entitling them to a junior interest in the proceeds of the liquidation of certain designated assets, and not until those assets would be liquidated could it be determined the exact amount of the deposit liability waived. The argument goes on to contend the last payment to the deposit holders in final settlement of their junior interest in the designated assets was in 1945, in settlement of the accounting action, and therefore that was the year in which the bank realized taxable income by reason of the waivers executed by the depositors in 1932.

We need not decide whether petitioner derived income from the forgiveness of debt in 1932 or in the years between 1932 and 1942. Our sole problem here is whether the petitioner realized income from the cancellation of the deposit indebtedness in 1945. We hold that if income did result to the petitioner by reason of the depositors' waiving one-third of their deposits in 1932, then the year 1942 would be the last year in which petitioner could have derived such income.

On May 21, 1941, some 9 years after the waiver of deposits, the petitioner offered to purchase the outstanding equity of the participation certificate holders for $534,125.08. The State court approved the offer and ordered payment of the agreed sum. In consideration therefor, the trustee was ordered to execute and did execute an assignment and release to the petitioner. This instrument, dated October 7, 1942, "assigned, transferred, delivered, and released" to the petitioner all right, title, and interest of the participation certificate holders in and to the junior participating interest in the designated assets remaining in the hands of the petitioner. The instrument contained a provision whereby the release did not prejudice the rights of any interested party to an accounting.

We feel that the purchase in 1942 of an assignment and release of the right, title, and interest of the depositors in the designated assets determined the final amount, if any, of indebtedness forgiven. This purchase, and the order of the court approving the purchase, terminated all rights the holders had under the trust agreement and participation certificates except for an accounting. Any debt or liability to the participation certificate holders under the trust agreement was

completely extinguished by this purchase just as surely as a complete liquidation would have extinguished it. The participation certificate holders, subsequent to the assignment and release, could have had no standing in court to sue on the certificates, as the execution of the assignment and release extinguished the liability evidenced by the certificates.

As previously stated, respondent argues the payment in 1945 of $195,000 under the final decree in the accounting action was the final payment in satisfaction of the petitioner's liability to its depositors under the original reorganization agreement. The argument is that it was not until this payment was made that the liability was extinguished and the full amount of the canceled deposit liability became income in that year. The argument of respondent that the payment in settlement of the accounting action was a final payment to the depositors under the original reorganization agreement fails to take into consideration the fact that the $195,000 was paid under a settlement stipulation which did not admit the validity of any of the claims made in the accounting action. The settlement of the suit merely admitted there was a dispute and a sum of money was paid to be rid of the controversy. *Mutual Ben. Health & Accident Ass'n v. Crowder*, 201 Miss. 92, 28 So. 2d 654. The payment of the settlement sum, under such a stipulation, cannot be said to be a payment that was due. Cf. *Laurence M. Marks*, 27 T. C. 464.

The stipulation of settlement of the accounting action recites it is entered into by both parties "in order to avoid further litigation" and it is expressly stated therein it is "without any admission of liability on the part of" the bank or trustee. It provides for the withdrawal of "all objections heretofore filed against the accounts of proceedings of" the trustee and bank. The order of court approving the settlement approved the acts and proceedings and accounts of the bank and trustee.

Under this record we are convinced the bank's payment of a net of $125,000 in settlement of the accounting action in 1945 was not, as respondent argues, the final payment under the trust agreement. This was a settlement, in a suit for some 8 million dollars, which was based on allegations of mismanagement by the trustee and petitioner with reference to the assets on which the depositors had a junior interest. There was joined to the action the trustee's action seeking approval of his accounts and the petitioner, pursuant to court order, filed its accounting. All of the accounts of the petitioner and trustee were approved after the stipulated withdrawal of all objections thereto. The payment of the settlement sum was to settle the mismanagement charge, or to get rid of the litigation. Any payment in the 8-million-dollar lawsuit would not be a payment back by petitioner

of a portion of the deposit indebtedness waived in 1932. It would not be a payment in partial satisfaction of the depositors' junior lien against the designated assets. Under respondent's theory of the case the petitioner realized income from the cancellation of the deposit debts in 1932, in the last year that it made a payment to the depositors in extinguishment of their interest represented by the trust agreement, and in an amount that is the amount waived, less the sums paid by the bank to the depositors under the trust agreement. Without indicating that we are in complete agreement with respondent's theory, we hold the last payment was in 1942; that the settlement of the action in 1945 by payment of $125,000 was not the payment of any sum due under the trust agreement. Rather, it was a payment to get rid of litigation, with no admission the sum was a payment due under the trust agreement.

The second issue is whether the petitioner was entitled to take gains or losses in 1943, 1944, and 1945 in the sale or disposition of designated assets. The respondent disallowed such losses. This issue was resolved by our holding heretofore that the executory nature of the reorganization plan was terminated in 1942. Since the petitioner purchased all outstanding equities in the remaining assets in 1942, it follows that any gains derived, or losses sustained, from the sale or disposition of its assets were the petitioner's and only the petitioner's.

The third issue concerns the bases of the assets sold or disposed of in 1943, 1944, and 1945. The respondent contends that they must be reduced as a result of the reorganization. The petitioner, on the other hand, argues that they should be increased as a result of the reorganization. It was stipulated that the adjusted bases of the assets were used at all times by the petitioner, but no adjustment was made because of the reorganization. The respondent argues that when the petitioner "repurchased" or "reacquired" certain assets in 1942 from the participation certificate holders the referee established a new basis by his evaluation of the remaining assets. We cannot agree to this proposition. First of all, legal title to the assets remained in the petitioner at all times. The petitioner, in 1942, merely purchased the outstanding equity of the depositors in the proceeds of liquidation. This act did not alter the bases.

The argument of petitioner that there must be an increase of bases because of the payment in 1942 of $534,125.08 is likewise without merit. This payment was not a capital expense but the final payment in extinguishment of an encumbrance it had created against its assets.

The fourth issue is whether the petitioner is entitled to a deduction in 1945 for a net operating loss carryover from 1944. This issue was resolved in favor of petitioner by our holding that the petitioner could claim gains or losses in 1943, 1944, and 1945.

The fifth issue is whether the petitioner was entitled to deduct as an ordinary and necessary expense, in 1945, the net sum of $125,000 paid during that year in settlement of certain legal proceedings. The respondent, of course, argues that this payment was petitioner's final payment of its liability to its former depositors. We have already resolved that question. Respondent also argues that the evidence fails to establish that the payment was proximately related to petitioner's business, or that it was ordinary and necessary thereto within the meaning of section 23 (a) of the 1939 Internal Revenue Code. Of course, the petitioner has the burden of proving both requirements.

Normally, one who regularly engages in the business of serving as a fiduciary and incurs and pays a liability growing out of the conduct of such business is entitled to deduct as a business expense the amount so paid. *John Abbott*, 38 B. T. A. 1290. Settlement of legal proceedings contesting an accounting by a fiduciary may be such an expense. *Valentine E. Macy, Jr.*, 19 T. C. 409.

The petitioner, a bank, was in the business of liquidating assets under a contract so to do. By the very nature of a bank's operation it serves as a fiduciary in handling trusts and estates. As such, its business is to gather, hold, invest, reinvest, and liquidate assets of the trusts and estates as the situation demands. In the instant case, the trust agreement imposed upon the petitioner the duty to liquidate and to account for the designated assets. It was by virtue of this liquidation and accounting that legal proceedings were instituted and a payment by petitioner made in settlement thereof. We feel that the payment was ordinary and necessary within our holding in *Great Island Holding Corporation*, 5 T. C. 150, and *Valentine E. Macy, Jr., supra*. Here we have a compromise settlement of a bona fide claim charging petitioner with mismanagement in the liquidation of assets. In the stipulation of settlement, and the order of the State court approving the settlement, any fault or liability on the part of the petitioner was repeatedly denied by petitioner. We feel that according to the evidence before us, the petitioner paid its former depositors the net sum of $125,000 so as to prevent long, drawn-out litigation which was disrupting the normal business of the petitioner. Whether the deduction be termed an ordinary and necessary business expense or a loss incurred in petitioner's trade or business is of little importance, for the payment is obviously one or the other and the result is the same. *Great Island Holding Corporation, supra; Laurence M. Marks, supra*.

Reviewed by the Court.

*Decision will be entered under Rule 50.*