HERSHEY CREAMERY CO. v.
UNITED STATES.
No. 48926.

United States Court of Claims.
Jan. 8, 1952.

Willis F. Daniels, Harrisburg, Pa., for plaintiff. Edward C. First, Jr., and Daniels, Swope & First, Harrisburg, Pa., were on the briefs.

H. S. Fessenden, Washington, D. C., with whom was Asst. Atty. Gen. Theron Lamar Caudle, for defendant. Andrew D. Sharpe and A. F. Prescott, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff seeks a refund of income tax paid in 1943. It claims that the Bureau of Internal Revenue erroneously refused to permit the deduction, under Section 23(a) (1)(A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a)(1)(A), as an ordinary and necessary expense, of the sum of $81,- 118.62 paid by plaintiff to the Administrator of the Office of Price Administration in settlement of a civil suit for overceiling price charges. This alleged expense was incurred in the following manner.

Plaintiff was engaged in the manufacture and sale of dairy products, principally ice cream. Due to rising costs during the war year of 1942, plaintiff found it necessary to seek relief from existing price ceilings on its products. Following a conference with officials of the Office of Price

Administration in Washington, D. C., plaintiff, on November 30, 1942, filed a petition in the District Office of the Office of Price Administration in Harrisburg, Pa., requesting an increase in its ceiling selling prices. A supplemental application was filed by plaintiff with the Washington office on December 18, 1942.

During the course of conferences held on these applications between representatives of plaintiff and members of the Office of Price Administration on December 29, 1942, and on January 13, 1943, plaintiff was informed that an order granting the desired relief would be issued. On January 30, 1943, in response to a telephone inquiry, plaintiff's vice president was advised that the order had not yet been issued, but that the order would be forthcoming within forty-eight hours. When the order was not issued within forty-eight hours, plaintiff's vice president again called the official in the Office of Price Administration in Washington, D. C., who had assured him that the order would be forthcoming, but was informed that this official was out of town.

Although the order was not forthcoming as promised, plaintiff increased its maximum selling prices sometime during the first two weeks of February 1943. Plaintiff did this in good faith, and without any willful intent to violate existing price ceilings, relying upon the assurances previously given that such an order would be issued. On February 22, 1943, plaintiff voluntarily discontinued the price increase on the advice of its counsel that it was in danger of being cited for a price violation because the formal order for the increase had not been received.

On March 18, 1943, plaintiff was notified by the Office of Price Administration that an amended regulation had been issued granting industry-wide price relief, which it was believed would provide the relief sought by plaintiff. However, because of special requirements of Pennsylvania law, this amended regulation did not afford plaintiff the desired relief, and on March 31, 1943, plaintiff requested the Office of Price Administration to reconsider its case. As a result, further conferences were held between representatives of plaintiff and of the Office of Price Administration, in April and May 1943.

On June 9 or 10, 1943, plaintiff once again discussed the matter with an Office of Price Administration attorney who informed plaintiff that final approval of the requested relief had not been given, but that he did not know what was delaying it inasmuch as plaintiff appeared to have complied with all the necessary regulations. Relying in good faith upon this advice, and without any willful intent to violate existing price ceilings, plaintiff on June 10, 1943, again increased its maximum selling prices.

Plaintiff also filed a formal application for price relief on July 12, 1943, with the New York Regional Office of the Office of Price Administration because a substantial portion of its operations was within that territory. This application was denied on July 28, 1943, and on July 31, 1943, plaintiff's supplemental application of December 18, 1942, filed in the Washington office, was also denied. Plaintiff filed no requests for review of these decisions but, instead, on August 5, 1943, terminated the price increases effected on June 10, 1943.

No further steps were taken until January 29, 1944, when the Administrator of the Office of Price Administration instituted a civil action for treble damages against plaintiff in the United States District Court for the Middle District of Pennsylvania. This action was brought under Sections 205(a) and (e) of the Emergency Price Control Act of 1942, 56 Stat. 23, 33, 50 U.S.C.A.Appendix, § 925 (a, e), for plaintiff's overceiling sales of ice cream in violation of the general maximum price regulation. No answer to this action was filed by plaintiff. In the meantime, the Administrator of the Office of Price Administration issued a formal order and opinion on April 27, 1944, denying plaintiff's original application of November 30, 1942, for a price increase.

On May 15, 1944, plaintiff filed its corporate income and declared value excess profits tax returns for 1943. These returns were prepared to reflect the accrual

880

basis of accounting regularly employed by plaintiff in keeping its books. Plaintiff reported therein an income tax liability of $141,312.25, subsequently reduced by the Bureau of Internal Revenue to $139,221.29, and an excess profits tax liability of $545,964.48, subsequently adjusted to $488,790.54.

Later, on May 31, 1944, pursuant to a stipulation between plaintiff and the Office of Price Administration, the United States District Court entered a consent decree against plaintiff for $81,118.62 representing the exact amount of the overcharges exacted in February 1943, and the amount exacted for the period from June to August 1943. This amount of $81,118.62 represented only single damages, and the stipulation provided that it was accepted by the Government in full settlement of the Administrator's claim for treble damages under the Emergency Price Control Act of 1942.

Following this consent decree, on September 15, 1944, plaintiff filed an amended corporate income and excess profits tax return for the year 1943. In this amended return plaintiff sought only to reduce the amount of its gross sales for 1943 by the amount of $81,118.62, which amount was designated a "refund of sales per Office of Price Administration agreement." [1] Plaintiff's attempted reduction in gross sales was rejected by the Bureau of Internal Revenue. As a result, on May 14, 1948, plaintiff filed a claim for a refund in the amount of $65.509.97 for the calendar year 1943, which amount represented the tax on the $81,118.62 paid in settlement of the Office of Price Administration suit. The Commissioner did not act upon this claim within six months; hence, plaintiff instituted the present action.

Plaintiff argues that the payment of the amount of overcharges to the Office of Price Administration pursuant to the consent decree constituted the payment of

damages for violation of the Emergency Price Control Act, and did not constitute the payment of a penalty. By treating the payment as one for damages, plaintiff urges that it is deductible as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code. In the alternative, plaintiff insists that even if the payment to the United States be regarded as a penalty, its deduction for tax purposes as an ordinary and necessary business expense would not frustrate the policies of the Emergency Price Control Act of 1942, because of the fact that plaintiff made the overcharges without intent to violate the Act. Plaintiff also contends that the payment may be properly deducted as an accrued expense in 1943 because, while the payment was not made until 1944, all of the events which fixed the existence of the liability and the amount thereof occurred in 1943. The Government insists that because the plaintiff kept its books on the accrual basis, it cannot deduct as an expense in 1943 amounts which were neither paid nor accrued during that taxable year. The Government also argues that the payment of the amount of overcharges to the Office of Price Administration constituted a penalty for violation of the ceiling prices; and, that under existing decisions, penalties are not deductible as ordinary and necessary business expenses, because, to allow their deduction would destroy the purposes of the penalty as a deterrent to further violations. Furthermore, the Government contends that plaintiff was not an innocent violator of ceiling price regulations, having raised its prices knowing that no price increase had been granted.

As a statutory authorization for the deduction of the amount paid to the Office of Price Administration, plaintiff relies on Section 23(a) (1) (A) of the Internal Revenue Code, as amended by 56 Stat. 798, 817; 26 U.S.C.A. 23(a) (1),

1. In the amended tax return plaintiff sought to reduce the amount of its gross sales for 1943 by the amount of the payment to the Office of Price Administration. However, both plaintiff and defendant have treated the amended return as though plaintiff had sought to deduct the payment as an ordinary and necessary business expense.

(A), which provides for the deduction of "All the ordinary and necessary expenses paid or incurred during the taxable year".[2] The term "ordinary" has been construed not to require that the payments be habitual or normal in the sense that the same taxpayer has to make them frequently, but rather the payment may be unique or non-recurring to the particular taxpayer affected. Commissioner v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171. The type of transaction out of which the obligation arose, and its normalcy in the business world may be taken as guides to the allowance of the deduction. Mertens, Law of Federal Income Taxation (1942), Section 25.07. Here the plaintiff exacted the over-charges, without willful intention to violate OPA Regulations, during a period marked by the existence of complex wartime price regulations. Unintentional violations and the resultant repayment of the total amount of the overcharges to the consumers, or to the Government on behalf of the consumers, became an ordinary and common business occurrence. National Brass Works v. Commissioner, 9 Cir., 182 F.2d 526, 20 A.L. R.2d 590. Since such payments were rather commonplace on the part of businesses of any size, we see no reason why they cannot be deducted as an ordinary and necessary business expense, unless, as contended by the Government, they constitute penalties, the deductibility of which has consistently been denied. Commissioner v. Longhorn Portland Cement Co., 5 Cir., 148 F.2d 276, certiorari denied, 326 U.S. 728, 66 S.Ct. 33, 90 L.Ed. 432; Burroughs Building Material Co. v. Commissioner, 2 Cir., 47 F.2d 178. Penalties are exacted for engaging in a transaction offending the State, and public policy forbids their being considered as part of the business so as to permit the violator to gain a tax advantage.

Helvering v. Hampton, 9 Cir., 79 F.2d 358. Therefore, in order to determine whether the amount paid to the United States by plaintiff constitutes the payment of a penalty, it becomes necessary to examine the legislation under which the payment was exacted.

Section 205 (e) of the Emergency Price Control Act of 1942 provides as follows: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action unde this subsection on behalf of the United States. Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid. The provisions of this subsection shall not take effect until after the expiration of six months from the date of enactment of this Act."

The Income Tax Unit of the Bureau of Internal Revenue was the first to construe the tax consequences of Section 205 (e), ruling that amounts paid in settlement of

2. § 23. Deductions from gross income. In computing net income there shall be allowed as deductions; (a) Expenses.
(1) Trade or business expenses.
(A) In general.
All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered;

traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

a suit by the Price Administrator, or in satisfaction of a judgment obtained by him, were in the nature of penalties, and for that reason not a deductible expense, even though the suit was a civil action. I. T. 3627, 1943 Cum.Bull. 111. The Tax Court reached the same conclusion in Scioto Provision Company, 9 T. C. 439, holding that: "* * * It is begging the question to say that the enforcement provisions of the act authorizing the consumer or the Administrator of OPA to bring suit for treble damages for certain violations of price ceilings (Sec. 205 (e)) were not penal in nature and that payments made thereunder should therefore not be disallowed for reasons of public policy."

The same result was reached in Garibaldi & Cuneo, 9 T.C. 446.

However, the Circuit Court of Appeals for the Second Circuit reversed a similar ruling of the Tax Court in the case of Jerry Rossman Corporation v. Commissioner, 175 F.2d 711, 714, reversing 10 T.C. 468. In this case the taxpayer discovered his own inadvertent violation of ceiling prices and reported his violation to Office of Price Administration officials. The Office of Price Administration agreed to accept the taxpayer's tender of the amount of overcharges in settlement of the matter. Thereafter, the taxpayer, like plaintiff in this case, attempted to deduct the amount of the overpayment as an ordinary and necessary business expense, but was met with the contention on behalf of the Government that such a payment constituted the payment of a penalty. The court, in deciding in favor of the taxpayer, concluded that: "* * * First, we say that on no theory was the payment of the overcharge to the United States the payment of a 'penalty.' Second, we say that, even if it was the payment of a 'penalty,' that is not a 'rigid criterion' of its deductibility. Third, we say that there was positive and compelling evidence that to allow such a deduction would not 'frustrate' the policies of the underlying act. * * * The practice of the Administrator was to accept the overcharge as adequate compliance only if the seller had both acted in good faith, and had taken all 'practicable precautions'; * * *."

The court based these conclusions on the fact that "there are 'penalties' and 'penalties,' and that some are deductible and some are not." As the court pointed out, the doctrine of nondeductibility of penalty payments for tax purposes is one of "judicial gloss" inasmuch as the Revenue Act does not forbid their deduction.

The Rossman decision was followed in National Brass Works, Inc. v. Commissioner, supra, although therein the Office of Price Administration discovered the violation and instituted suit for recovery of treble damages. In permitting the deductibility of the exact amount of the overcharges refunded to the United States in settlement of the suit, the court, 182 F.2d at pages 530, 531, there laid down the following test:

"* * * the sum paid to the government may be allowed as a business deduction when the overcharge has been innocently and unintentionally made and not made through an unreasonable lack of care. The whole question resolves itself into proof with the burden on the claimant. Under such principle it is clear that a fine levied in a criminal action can never be an ordinary and necessary expense. Where guilt has been established neither innocence nor good intention abide. * * *

"Where the payment has been made in circumstances which are inconsistent with intention to violate the Act and inconsistent with a lack of due care to conform to the law it would be an ordinary and necessary expense. Allowance of the deduction in these circumstances could not frustrate the enforcement of the Act."

The Tax Court has recently reversed its position to follow the Rossman and National Brass Works decisions in Farmers Creamery Co. of Fredericksburg, Va., 14 T.C. 879, a case involving, like the Rossman case, a voluntary payment of the amount of overcharges arising out of an inadvertent and unintentional violation.[3]

3. The Tax Court refused to follow these cases in Henry Watterson Hotel Co., 15 T.C. 902, where there was no showing that the overcharges were innocently made.

We concur with the conclusions reached in the Rossman and National Brass Works cases that the payment of merely the amount of overcharges or single damages to the United States for an innocent and unintentional violation of price ceilings does not constitute the payment of a nondeductible penalty, and therefore may be allowed as a deduction as an ordinary and necessary business expense. The payment of the overcharges to the Government in the instant case was a remedial measure to prevent innocent and unintentional violators from profiting by their inadvertence. For that reason only the amount of the overcharge was exacted from them as a matter of policy by the Office of Price Administration. The cases cited by defendant, as holding such payments are penalties, deal, for the most part, with payments of the full treble damages provided for by Section 205 (e). Bowles v. Farmers National Bank of Lebanon, Ky., 6 Cir., 147 F.2d 425, 429.

Plaintiff has established to our satisfaction that the overcharges were unquestionably exacted in good faith, and without intent to violate the ceiling prices. Plaintiff had been in repeated contact and conference with the officials of the Office of Price Administration concerning relief prior to the dates of both price increases, and when it eventually raised its prices, it did so only in reliance upon statements of the officials of the Office of Price Admin-

istration that the requested relief would be forthcoming within a few hours. Overcharges made pursuant to such advice do not, in our opinion, indicate a willful intent to violate the Act. The voluntary discontinuance of the overcharge when the promised price increase was not forthcoming, negative a deliberate intention to violate the price ceilings.

While we have concluded that the amount of the overcharge repaid to the United States is deductible as an ordinary and necessary expense, there remains to be considered the question whether the payment is properly deductible as an expense of plaintiff accruing in the year 1943. Section 41 of the Internal Revenue Code, 53 Stat. 24, 26 U.S.C.A. § 41, declares that net income shall be computed upon the basis of the taxpayer's annual accounting period, calendar year or fiscal year, in accordance with the method of accounting regularly employed;[4] and Section 43, as amended by 56 Stat. 830, 26 U.S.C.A. § 43, provides that the deductions and credits provided for in this chapter shall be taken for the taxable year in which paid or accrued or paid or incurred, depending upon the accounting method used by the taxpayer to compute net income.[5] The Government contends that since plaintiff kept its books on the accrual basis, this item may not be deducted in 1943 as an accrued expense since plaintiff denied liability for the overcharges and failed to refund the amount

4. "§ 41. General rule.—The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year."

5. "§ 43. Period for which deductions and credits taken.—The deductions and credits (other than the corporation dividends paid credit provided in Section 27) provided for in this chapter shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. In the case of the death of a taxpayer whose net income is computed upon the basis of the accrual method of accounting amounts (except amounts includible in computing a partner's net income under section 182) accrued as deductions and credits only by reason of the death of the taxpayer shall not be allowed in computing net income for the period in which falls the date of the taxpayer's death."

thereof to its customers. The Government insists that it was not until the settlement between plaintiff and the Office of Price Administration was entered into on May 31, 1944, that the liability of the taxpayer to pay the amount was established.

It is well-settled "that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent". Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 597, 88 L.Ed. 725; Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347; Canton Cotton Mills v. United States, 94 F.Supp. 561, 119 Ct.Cl. 24. However, the mere fact that the exact amount of liability has not been definitely fixed will not prevent the deduction so long as a basis exists by which the amount due could have been estimated within reasonable limits. Canton Cotton Mills v. United States, supra; Mertens, supra, sec. 12.66. The criteria for determining this question is concisely expressed in C. A. Durr Packing Co., Inc. v. Shaughnessy, D.C., 81 F.Supp. 33, 35, affirmed without opinion, 2 Cir., 189 F.2d 260, as follows: "It appears that a claim may be accrued by a taxpayer for tax purposes when, (a), all of the events have occurred, which fix the amount of the claim and determine the question of liability; (b), the amount is readily ascertainable; (c), the liability therefor is determined rather than contingent."

We think the factual situation in the instant case meets all the necessary requirements for deduction as an accrued item in 1943 rather than in the year 1944. The events which fixed the amount of the claim and determined the fact of the taxpayer's liability were the charging of over-ceiling prices in the year 1943. The moment that plaintiff exacted an overcharge a statutory liability arose under Section 205 (e) of the Emergency Price Control Act of 1942 to refund at least the amount thereof to the consumer or to the United States. Further, as the overcharges were not exacted in bad faith, the amount of liability was not undetermined, because the practice of the Office of Price Administration had become definitely established to require only the repayment of the overcharge as single damages in such cases. National Brass Works, Inc., v. Commissioner, supra; Office of Price Administration Manual, Section 9.1601. Contrary to the Government's contention we feel that the settlement agreement entered into on May 31, 1944, did not in itself establish the existence of a liability which was previously contingent, but was merely an acceptance by the Government of the amount of the overcharge as fixed by and ascertained from plaintiff's books and records for 1943. There is nothing in the record to indicate that plaintiff at any time denied or contested its liability for the overcharges. Plaintiff did not file an answer to the suit by the Office of Price Administration. There was no way in which plaintiff could have refunded the overcharges to consumers in 1943 because the overcharges were exacted during "the course of trade or business" with plaintiff's retail outlets, and not from customers who bought for their own use and consumption. Where overcharges were exacted under such circumstances, Section 205 (e) required that they be paid to the United States on behalf of the consumers, and this is precisely what plaintiff did in this case.

Our conclusion in the instant case is not inconsistent with the holding of the Supreme Court in either the Security Flour Mills or Dixie Pine Products cases, supra, since in both of these cases the taxpayer was claiming on the one hand a deduction for the tax liability involved as an accrued item on its books, and on the other hand was denying in an appropriate legal tribunal the applicability of the tax to it, which tax it had refused to pay. Such is not the factual situation here.

We conclude that plaintiff properly attempted by amendment to deduct the amount of the payment of the overcharges from its 1943 return. A fundamental requirement is that returns reflect true income, and expenses should, where possible, be set up against income to which they are attributable. Helvering v. Russian Finance & Construction Co., 2 Cir., 77 F.2d 324.

Only by deducting this amount in 1943 can plaintiff properly reflect its taxable income for 1943.

Judgment will be entered for plaintiff for the amount due upon the filing by the parties of a stipulation showing the amount of the overpayment and the amount of interest due thereon according to law. It is so ordered.

HOWELL, MADDEN and WHITAKER, Judges, concur.

JONES, Chief Judge, took no part in the decision of this case.