## MARANTZ et al. v. YOKE.
### No. 272-F.

United States District Court
N. D. West Virginia, Fairmont Division.
June 30, 1953.

David S. Hearst, of Weirton, W. Va., for plaintiffs.

Howard Caplan, U. S. Atty. of Clarksburg, W. Va. (Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe and Paul O'Donoghue, Sp. Assts. to Atty. Gen., on brief), for defendant.

WATKINS, District Judge.

This is an action by Benjamin and Mabel Marantz for the recovery of income taxes for the year 1945 in the sum of $1,677.20 plus interest.

Two questions are presented as follows:

(1) Whether the sum of $2,736.53 which the taxpayers paid to the United States in settlement of violations of price ceiling regulations is deductible as ordinary and necessary business expenses under Section 23 of the Internal Revenue Code, 26 U.S. C.A. § 23, and

(2) If such sum is deductible, is it deductible in the year 1945, as claimed by the taxpayers, who are on the accrual basis?

Nearly all the important facts are covered in the following stipulation:

"1. At some time in the very late part of December, 1945, the Office of Price Administration sent investigators to the department store of Benjamin Marantz, one of the plaintiffs in the above styled action, in Weirton, Hancock County, West Virginia, and concluded the investigation after February 1, 1946. This was a routine investigation of all stores in this vicinity. During this investigation Benjamin Marantz cooperated with the investigators.

"2. The investigators at that time explained to Benjamin Marantz how the prices should be determined on merchandise sold in his store; that is, the Office of Price Administration had a certain formula which permitted a percentage of profits to be tacked on the wholesale price of the various items to be sold in the regular course of business. Benjamin Marantz thought he had understood the formula when he priced his merchandise in 1945.

"3. However, this routine investigation disclosed that Benjamin Marantz differed in his opinion as to the price formula from that of the investigators as to the price formula. Benjamin Marantz, in determining the various prices, had based his percentage on the invoice price billed to him from the whole-

saler. The investigators of the Office of Price Administration contended that he should have based his prices on the net cost of the merchandise; that is to say, the Office of Price Administration expected the merchant to discount all of his bills. The examiner of the Office of Price Administration found that the Marantz department store had marked its merchandise up properly, but claimed that the original purchase price should be reduced for cash discounts taken. In other words, assuming that a given item of merchandise cost one dollar, with an allowance of two percent cash discount in thirty days, then the mark-up should be based on ninety-eight cents, and not on one dollar. Benjamin Marantz explained to the investigators that he could not always know if he would be in a position to discount all of his bills, and for that reason he based his price on the invoice amount without regard to discount. However, the investigators claimed that regardless of whether he took the discount or not, since he was entitled to discount, he should have based his price on the net amount after the discount had been taken.

"4. It was determined by the examiner of the Office of Price Administration that the overcharge by Marantz was done unintentionally, and without willfulness.

"5. The investigators, using their formula, found that Benjamin Marantz had overpriced his merchandise to the extent of $2,736.53, for the period beginning February 1, 1945, and ending January 31, 1946.

"6. It is further stipulated that eleven-twelfths of the $2,736.53 was applicable to the year 1945.

"7. Immediately upon this determination by the Office of Price Administration, the plaintiff, Benjamin Marantz, paid to the government the said sum of $2,736.53, by certified check, on April 17, 1946.

"8. However, before this settlement could be approved, a friendly suit had to be instituted by the government in this Court, and such suit was instituted on the 10th day of July, 1946, by filing a complaint at Wheeling, West Virginia, in the United States District Court for the Northern District of West Virginia. The suit was styled 'Paul Porter, Administrator, Office of Price Administration, plaintiff vs. Benjamin Marantz, doing business as Marantz Department Store,' Civil Action File No. 389–W.

"9. Defendant in that action consented to the entry of a decree, and final judgment was entered on October 16, 1946, by W. E. Baker, United States District Judge for the Northern District of West Virginia.

"10. It was agreed upon by the attorney for the government, Edwin O. Thornhill, Enforcement Attorney, Office of Price Administration, that the violations were not intentional or willful; and that Benjamin Marantz would be required to pay the actual sum of the overcharge, which was $2,736.53.

"11. For the year ending December 31, 1945, plaintiffs made final payment on March 15, 1946, of income taxes amounting to $12,465.38.

"12. On April 17, 1946, plaintiffs paid to the United States Treasurer the sum of $2,736.53, for the overcharge of goods and commodities sold by plaintiff, Benjamin Marantz, in a retail capacity, for the period beginning February 1, 1945, and ending January 31, 1946.

"13. Claim for refund for the year 1945 for income taxes paid on said $2,736.53, amounting to $1,677.20, was filed with F. Roy Yoke, Collector of Internal Revenue for the District of West Virginia, Parkersburg, West Virginia, on the 20th day of May, 1946. The claim for refund was based on a request for reduction in income tax for and on account of the payment to the United States Treasurer as the result of unintentional overcharges made in violations of Office of Price Administration regulations. Such claim was timely filed.

"14. Plaintiffs were informed by letter dated December 8, 1948, that such claim for refund was denied."

A short time before this case was submitted on brief, the United States Court of Claims decided the case of Hershey Creamery Co. v. United States, 101 F.Supp. 877, 122 Ct.Cl. 423, the material facts of which were almost identical to the facts in this case. The same questions were raised in the Hershey case, and in a well con-

sidered opinion, reviewing the cases on the points raised, the Court of Claims decided both questions in favor of the taxpayer.

In its brief filed in this case the government admits that the facts in the Hershey case and in this case are very similar, but attempted to distinguish the two cases in the following manner: It stated that under the stipulation in this case Marantz did not even know that the government claimed an overcharge, or the nature of it, until 1946, whereas in the Hershey case there was discussion and controversy in regard to the proper prices during the year in which the taxpayer accrued the liability. On the other hand, the taxpayer took the position that the stipulation filed in this case made it clear that the examination was begun in 1945 and that on the very first visit of the O.P.A. examiners, they explained to the taxpayer why they thought he was in violation of the Act and that the taxpayer in 1945 agreed to pay whatever overcharges were found to be due from final calculations to be made from the invoices. Since the stipulation was not clear on this point, the court called for further evidence. At the hearing Robert Marantz, son of taxpayers and manager of the Marantz store, testified as to what occurred, but the government did not call any witnesses. This testimony, when considered with the stipulation, showed that the investigators came to the Marantz store shortly before Christmas in 1945. They took an inventory of a certain section of the store, took the retail prices listed and examined the corresponding invoices for the merchandise. They pointed out the overcharges, and how they had occurred, by basing the sale price on the wholesale price instead of on the wholesale price less discount. Marantz promptly agreed to pay the overcharges, but the investigators stated that they would have to take the invoices to their office to figure the exact total of the overcharge; that payment could not be made then because they first had to go through a certain judicial procedure in order to collect the overcharge. This all occurred in December, 1945. At no time did the taxpayers refuse to pay the overcharge, and at no time did the examiners ever claim that the overcharges were willful. Obviously, it was impossible to make payment to the many store customers who had purchased merchandise in the usual course of a retail store business, and any repayment of overcharges would have to be made to the government.

The investigators took the invoices with them and did not return with the invoices until the latter part of January, 1946. In the meantime the overcharges continued during January, 1946, because, without the invoices, the taxpayer could not determine the correct prices. It is stipulated that $11/12$ths of the total overcharges were applicable to the year 1945.

■ The government contends that the payment of the overcharges constituted the payment of a penalty, and was not deductible in any year. There is clearly no merit in this contention. A similar contention was made by the government in an O.P.A. case in Jerry Rossman Corporation v. Commissioner, 2 Cir., 175 F.2d 711, 714. In deciding for the taxpayer the court stated:

"* * * First, we say that on no theory was the payment of the overcharge to the United States the payment of a 'penalty.' Second, we say that, even if it was the payment of a 'penalty,' that is not a 'rigid criterion' of its deductibility. Third, we say that there was positive and compelling evidence that to allow such a deduction would not 'frustrate' the policies of the underlying act. * * * The practice of the Administrator was to accept the overcharge as adequate compliance only if the seller had both acted in good faith, and had taken all 'practicable precautions'; * * *."

The Rossman decision was followed by National Brass Works, Inc., v. Commissioner, 9 Cir., 182 F.2d 526, 20 A.L.R.2d 590. The Tax Court has reversed its prior position on this matter to follow the Rossman case. See Farmers Creamery Co. of Fredericksburg, Va., V.C.I.R., 14 T.C. 879.

In the Hershey case the court stated [101 F.Supp. 883]:

"We concur with the conclusions reached in the Rossman and National Brass Works cases that the payment of merely the amount of the overcharges or single damages to the United States for an innocent and unintentional violation of price ceilings does not constitute the payment of a non-deductible penalty, and therefore may be allowed * * * as an ordinary and necessary business expense."

Here the overcharge was unintentional.

■ Plaintiffs contend that the payment may be properly deducted as an accrued expense in 1945 because, while the payment was not made until 1946, all of the events which fixed the existence of the liability and the amount thereof occurred in 1945. I agree. In the Hershey case the court held that "the mere fact that the exact amount of liability has not been definitely fixed will not prevent the deduction so long as a basis exists by which the amount due could have been estimated within reasonable limits." The court stated:

"The criteria for determining this question is concisely expressed in C. A. Durr Packing Co., Inc., v. Shaughnessy, D.C., 81 F.Supp. 33, 35, affirmed without opinion, 2 Cir., 189 F.2d 260, as follows: 'It appears that a claim may be accrued by a taxpayer for tax purposes when, (a), all of the events have occurred, which fix the amount of the claim and determine the question of liability; (b), the amount is readily ascertainable; (c), the liability therefor is determined rather than contingent.' "

In the Hershey case the court stated:

"We think the factual situation in the instant case meets all the necessary requirements for deduction as an accrued item in 1943 rather than in the year 1944. The events which fixed the amount of the claim and determined the fact of the taxpayer's liability were the charging of overceiling prices in the year 1943. The moment that plaintiff exacted an overcharge a statutory liability arose under section 205(e) of the Emergency Price Control Act of 1942 [50 U.S.C.A.Appendix, § 925(e)] to refund at least the amount thereof to the consumer or to the United States. Further, as the overcharges were not exacted in bad faith, the amount of liability was not undetermined, because the practice of the Office of Price Administration had become definitely established to require only the repayment of the overcharge as single damages in such cases. National Brass Works, Inc., v. Commissioner, supra; Office of Price Administration Manual, Section 9.1601. Contrary to the Government's contention we feel that the settlement agreement entered into on May 31, 1944, did not in itself establish the existence of a liability which was previously contingent, but was merely an acceptance by the Government of the amount of the overcharge as fixed by and ascertained from plaintiff's books and records for 1943. There is nothing in the record to indicate that plaintiff at any time denied or contested its liability for the overcharges. Plaintiff did not file an answer to the suit by the Office of Price Administration. There was no way in which plaintiff could have refunded the overcharges to consumers in 1943 because the overcharges were exacted during 'the course of trade or business' with plaintiff's retail outlets, and not from customers who bought for their own use and consumption. Where overcharges were exacted under such circumstances, Section 205(e) required that they be paid to the United States on behalf of the consumers, and this is precisely what plaintiff did in this case.

*   *   *   *   *   *

"We conclude that plaintiff properly attempted by amendment to deduct the amount of the payment of the overcharges from its 1943 return. A fundamental requirement is that returns reflect true income, and expenses should, where possible, be set up against income to which they are attributable. Helvering v. Russian Fi-

nance & Construction Co., 2 Cir., 77 F.2d 324.

"Only by deducting this amount in 1943 can plaintiff properly reflect its taxable income for 1943."

The hearing of this case was continued at request of counsel to see if the government appealed the Hershey case. No appeal was taken and this case was then submitted for decision.

In the case of Harrold v. Commissioner, 4 Cir., 192 F.2d 1002, 1003, the court had before it a similar question. In that case the plaintiff in the year 1945 removed coal by the strip mining method from land in West Virginia held by it under five leases and contracts which required it to conduct the mining operations in conformity to the laws of West Virginia and to restore and replace the surface in compliance with the law of West Virginia. Before starting operations plaintiff had posted penal bonds with the state to insure faithful performance to its statutory obligations to refill the lands. The court pointed out "at the end of 1945 the tract of 31.09 acres had been completely stripped and the coal had been removed; and the obligation of the partners to refill had become fixed and definite." The court held that if the existence of the liability is fixed and certain and if the amount can be approximately calculated, that is sufficient for accruing the liability.

Speaking for the Fourth Circuit Court of Appeals, Judge Soper said:

"We conclude that when all the facts have occurred which determine that the taxpayer has incurred a liability in the tax year, and neither the fact nor the amount of the liability is contested, and the amount, although not definitely ascertained, is susceptible of estimate with reasonable accuracy in the tax year, deduction thereof from income may be taken by a taxpayer on an accrual basis. This procedure does not violate the principle that income taxes must be calculated on an annual basis, but, on the contrary, allocates to each year the proper income and expense, and prevents distortion of the taxpayer's financial condition in the tax year. See United States v. Ander-

son, 269 U.S. 422, 440, 46 S.Ct. 131, 70 L.Ed. 347. It gives heed to the true facts of each case rather than to an arbitrary rule of thumb; and the adjustments which must be made after the precise amount is ascertained are as easily consummated as those which are required when it is impracticable to make precise calculations of income or outgo before the end of the year, although all of the events which fix the amount have accrued therein. We think the proper approach to the problem before us should be realistic and one that accords with good business practice, rather than an approach based upon subtle technicalities."

Since it is stipulated that $11/12$ths of the overcharge of $2,736.53 was applicable to the year of 1945, only that percentage of the overcharge is properly deductible for 1945, which would reduce the amount claimed as tax refund proportionately.

Counsel may submit an appropriate order.