MÉNDEZ & COMPANY, INC., Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY, Defendant and Appellant.

No. 11220.   Argued November 8, 1954.—Decided January 31, 1955.

*José Trías Monge, Attorney General,* and *J. C. Santiago Matos, Assistant Attorney General,* for appellant. *Luis E. Dubón* and *R. García Cintrón* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

In its income tax return for the taxable year 1943, Méndez & Company, Inc., plaintiff herein, claimed as a deduction the payment to the Office of Price Administration [1] the amount of $30,000. The Treasurer denied the deduction and notified the taxpayer of a deficiency. After complying with the statutory administrative steps [2] the taxpayer applied to the former Tax Court of Puerto Rico.[3] After the case was heard, that Court rendered judgment granting the complaint and setting aside the deficiency determined by the Treasurer, defendant herein. That judgment is based on an opinion in which the following findings of facts are made:

"(1) On June 21, 1943, the Office of Price Administration notified plaintiff that an investigation had revealed certain price violations, and invited it to a preliminary hearing to be held the 25th of that month. On July 10, 1943, the Office of Price Administration sent another communication to plaintiff's attorney, stating that in accordance with the agreement, in connection with a settlement of the Administrator's rights to an action for treble damages for a violation of the regulations, a list was included containing the invoices of each violation in order that plaintiff determine the ceiling price charged during the period between April 10 and May 10, 1942. The period between April 10 and May 10, 1942 was the basic period fixed by the Administration to determine the ceiling price to be charged for each article.

---

[1] Hereinafter we shall refer to the Office of Price Administration as the "O. P. A."

[2] See § 57(a) of the Income Tax Act (No. 74 of August 6, 1925, Sess. Laws, p. 400) as amended by Act No. 230 of May 10, 1949 (Sess. Laws, p. 706).

[3] Pursuant to Act No. 11 of July 24, 1952 (Spec. Sess. Laws, p. 31), the Tax Court became a part of the Superior Court of Puerto Rico.

"(2) On August 13, 1943, the Office of Price Administration again wrote to plaintiff, through its attorney, ratifying the settlement made of the action for treble damages of the Price Administrator. Plaintiff was informed that after the Office had discussed the alleged violation with different members of plaintiff's firm, and after they discussed the matter with the Director, the principal attorney and other members of the staff, it was agreed that the Office would accept as a total payment for the action for treble damages, for all the violations or alleged violations incurred, the amount of $30,000. It was stressed that the settlement did not imply a waiver on the part of the Office of Price Administration of its right to institute any legal proceeding for the violations of its regulations, except that the right of the Price Administrator to file a civil action for treble damages on the grounds of those violations was waived. On August 16, 1943, plaintiff sent to the office of Price Administration a check to the order of the United States for the amount of $30,000 in harmony with the foregoing, making clear that said payment did not imply plaintiff's admission of having *intentionally* violated the regulations nor did it imply a waiver on the part of plaintiff of its other rights and privileges under the laws of Congress.

"(3) In addition to the facts previously set forth disclosed by the documentary proof, the evidence showed that in 1942 plaintiff had bought certain goods at a cost which was in excess of the ceiling price fixed, so he requested that the Office of Price Administration authorize him to sell those articles at an increased price so as to avoid selling them below cost. Then plaintiff visited the Office of Price Administration where he was attended by an official of that Office to whom the request was made. Said official authorized plaintiff to sell those goods at a specific higher price. It appeared subsequently that such an action was incorrect and that although there was a means of allowing plaintiff to sell at a price that would avoid selling below cost, it was necessary to follow certain prescribed regulations which obviously were not followed by the Price Administration official or by plaintiff.

"The violations charged against plaintiff amounted, in June, 1943, to $26,000. Upon revising the invoices, at the Administration's request, plaintiff found that by erroneous and involuntary omissions it had committed violations in other miscellaneous articles, and voluntarily offered to reimburse to the

United States all the overcharges, amounting to a total of $30,000. The action for treble damages with which the Administration threatened plaintiff amounted to about $75,000. Apart from the $30,000 payment no other criminal, civil or administrative proceeding was instituted against plaintiff in connection with the alleged violations."

That opinion also includes the special findings of fact which we copy:

"(a) The amount of $30,000, object of this suit, paid by plaintiff to the Office of Price Administration was not a criminal or civil penalty but a restitution of overcharges to the United States.

"(b) Based on the procedure followed by the Price Administrator in the case at bar, compromising administratively the action for treble damages for one of simple damages or restitution of the overcharge, without even having filed the corresponding action in court; in failing to file any criminal action against plaintiff for violation of the regulations, and in not having taken any other punitive action, either in court or administratively, the Court concludes that they were technical violations and not intentional violations of the law with the object of not complying with it, nor were plaintiff's acts so grossly negligent and careless as to amount to an intentional violation."

After referring to the case of *Jerry Rossman Corporation* v. *Commissioner of Int. Rev.*, 175 F. 2d 711, the trial court stated that it understood that the payment to O.P.A. of the $30,000 was deductible as an ordinary expense of plaintiff in the ordinary course of business and that "the way in which the price administrator handled the situation establishes a guidepost, and gives us a basis to conclude that in the opinion of the administrator they were not criminal or deliberate violations of the statute." It likewise indicated that, "we have made the finding of fact, because of the procedure followed by the Administrator, that this is not even the case of a civil penalty but of a restitution within the operating plan of the price regulations. But even if we labeled it 'penalty' as does the Secretary of the Treasury,

we understand that the disbursement was the natural result in the course of trade or business . . . and considering that in the instant case the violation was due in part to the erroneous action of an official from the Office of Price Administration, the payment is an *ordinary* one and as such deductible."

Feeling aggrieved by the judgment rendered, the Secretary of the Treasury appealed. In his brief filed on appeal he insists that the Superior Court erred (1) in not distinguishing the present case from that of *Rossman, Corp.*, *supra;* (2) in not deciding that plaintiff did not take the necessary precautions which an ordinary person would have taken to avoid the violation; (3) in not deciding that in the instant case "it was not a complicated regulation insofar as plaintiff was concerned, which would make it feasible for any taxpayer under circumstances similar to plaintiff's to incur the same violation so as to make it an ordinary violation, and hence to render the expenses as a result thereof ordinary and necessary;" and (4) in deciding that the $30,000 payment to the Federal Government was an ordinary and necessary expense in plaintiff's business.

In our opinion, the trial court did not commit the alleged errors. We know that plaintiff bought certain merchandise at prices in excess of the maximum price fixed by the O.P.A. and went to the offices of the latter in San Juan; that after holding an interview with one of its officials, it was authorized to sell the merchandise in question with a 10 per cent profit; that subsequently this authorization became void and the O.P.A. notified plaintiff that it had violated its regulations, so it would be advisable to have a conference on the subject; that several conferences were held concerning the matter and that as a result of those conferences plaintiff paid O.P.A. the amount of $30,000. The gist of the question now before us is whether under such a situation of facts the taxpayer has a right to deduct the $30,000 pay--

ment as an ordinary and necessary expense incurred by it during the taxable year referred to in carrying on its trade or business.[4]

The case of *Jerry Rossman, Corp.* v. *Commissioner of Int. Rev.*, *supra*, cited by the trial court, is without doubt a standard case in the matter. At the outset of the opinion, Judge Learned Hand, of the U. S. Court of Appeals for the Second Circuit, said that the only question involved was "whether the taxpayer was entitled to deduct a payment made to the United States during the year in question (1943) in circumstances to be stated." Those circumstances were that the taxpayer was a convertor of greige goods which shrink in the process of dyeing, and that in selling the merchandise he charged prices in excess of those authorized by the O.P.A. regulations. Although the O.P.A. had not started any investigation to that effect, the president of the corporation asked the advice of the Office as to what he should do. The official to whom he went suggested that he return the overcharges to the customers, but this was not possible for they had passed them on to the consumers. For that reason, the official consented that the taxpayer should settle the whole matter by paying the gross overcharge to the United States and the corporation did so. The amount paid constituted the disputed deduction. After stating those circumstances, it was indicated in the opinion that three questions arose: (1) whether the payment can be regarded, as a "penalty" at all; (2) supposing it can be so regarded, whether "penalties" are deductible as ordinary and necessary expenses; and (3) if some penalties are deductible and some

---

[4] Section 32(*a*) of the Income Tax Act (Sess. Laws, p. 400), provides that:

"In computing the net income of a corporation or partnership subject to the tax imposed by section 28 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, . . . ."

For the interpretation of the phrase ordinary and necessary business expenses see 30 Words & Phrases, permanent edition, p. 164.

are not, whether this penalty is among those which may be deducted. In that opinion it is indicated that it seems apparent that the payment of the overcharge—which is all that was involved in the case—can on no theory be treated as the payment of a penalty "and taken in its broadest sense that word [penalty] has a punitive, as opposed to a remedial, meaning"; that if the taxpayer had been able to distribute the overcharge to the terminal buyers, and had done so, the distribution would have been deductible; it did not make such a distribution because it could not; but in its stead it paid the overcharge to the Administrator, upon his agreement not to press for more. The opinion also states that assuming however, that they are wrong and that the payment can be regarded as that of a penalty, the second question is whether in any circumstances it could be an "ordinary and necessary expense" of the business; that the Revenue Act does not declare that penalties may not be deducted; that the doctrine is a judicial gloss of the lower courts only, save as the Supreme Court recognized it by implication in *Commissioner* v. *Heininger*, 320 U. S. 467, 88 L. Ed. 171, but that they agreed that it is a proper gloss; that, in short, there are "penalties" and "penalties", and that some were deductible and some were not. That in every case the question must be decided *ad hoc* and that this conclusion leads directly to the third question: whether even though the overcharge was a "penalty," its allowance as a deduction would frustrate any sharply defined policies of the Emergency Price Control Act. Then it is admitted in that opinion that the body of regulations, by which the Government of the United States sought to control prices during the last war, "was extraordinarily complicated and difficult to comprehend." That was inevitable due to the innumerable varieties of commercial transactions to be covered by them; that when the amendment to § 205(e) was being considered in 1944, the Administrator of the O.P.A. declared in a letter to the Senate Committee who was in charge of the matter " 'that

the protection of innocent violators from excessive damages' was 'obviously desirable' "; and that it had been its policy to adjust cases involving innocent violations by means of the payment of the amount of the overcharge; that Congress showed in 1944 by the amendments of § 205 that it agreed with the Administrator. It is also stated that "it seems to us that we should accept these expressions as evidence that in cases where the Administrator accepted the overcharge as sufficient, it did not 'frustrate' any 'sharply defined' policies of the Emergency Price Control Act of 1942." The Court of Appeals concludes that on no theory was the payment of the overcharge to the United States the payment of a penalty; that even if it was the payment of a "penalty" that is not a rigid criterion of its deductibility; and that there was positive and compelling evidence that to allow such a deduction would not " 'frustrate' the policies of the underlying act. . . . However, the Administrator's consent to accept the overcharge showed that he thought that the taxpayer had in fact used adequate care; and that was enough." Cf. Buscaglia, Treas. v. Tax Court, 68 P.R.R. 794, 798.

The criterion so stated in the case of Rossman, supra, has been followed in other cases. See National Brass Works v. Commissioner of Int. Rev., 182 F. 2d 526; Id. 205 F. 2d 104; Commissioner of Int. Rev., v. Pacific Mills, 207 F. 2d 177; Utica Knitting Co. v. Shaughnessy, 100 F. Supp. 245; Hershey Creamery Co. v. United States, 101 F. Supp. 877; Farmers Creamery Co. v. Commissioner, 14 T. C. 879; Cf. Bowles v. Hageal, 64 F. Supp. 294; Mercado v. Brannan, 173 F. 2d 554; Henry Waterson Hotel Co. v. Commissioner 15 T. C. 902.

We fully subscribe to the ruling in Jerry Rossman Corp v. Commissioner of Int. Rev., supra, and in the cases that followed it. Similarly to that case, plaintiff's violation of O.P.A. regulations was not intentional. The evidence show it. It went—the trial court concluded—to one of the official

of that office and followed his advice. Although that advice was ineffective, the truth is that plaintiff, being doubtful, went to an official source and abided by the advice which was given there. It is unquestionable that plaintiff could have done more than it did, by complying with O.P.A. regulations in similar cases, but it cannot be said that in failing so to proceed, it becomes a wilful violator of those regulations and that therefore the payment made is not deductible. The case of *Rossman*, like the instant one, is one of restitution or devolution of overcharges. In that sense both cases are similar. Therefore, there was no need to distinguish this case from that one, but rather to reconcile them. The amounts paid in both cases were deductible as ordinary and necessary expenses in the course of trade or business. As in that case, the allowance of these deductions does not frustrate the sharply defined policies of the Emergency Price Control Act.

The judgment appealed from will be affirmed.