818 ■

**HOOVER MOTOR EXPRESS CO.,**
**Inc., Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 2013.**

United States District Court
M. D. Tennessee, Nashville Division.

Oct. 11, 1955.

Judson Harwood, Nashville, Tenn., for plaintiff Hoover Motor Express.

Fred Elledge, Jr., U. S. Atty., Nashville, Tenn., and R. B. Ross, U. S. Dept. of Justice, Washington, D. C., for the United States.

WILLIAM E. MILLER, District Judge.

The principal issue for decision is whether fines paid by a truck operator for violations of state laws prescribing maximum weight limitations are deductible from gross income as ordinary and necessary business expenses under Section 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(a) (1) (A) which provides as follows:

> "In computing net income there shall be allowed as deductions * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

The Commissioner of Internal Revenue, on September 10, 1942, issued a special ruling that such fines were deductible. That ruling remained in effect until it was rescinded by a new ruling of the Commissioner issued November 30, 1950. The reasons for revocation of the earlier ruling are set forth in the regulation of November 30, 1950, as follows:

> "Reconsideration has been given to the conclusion heretofore reached by the Bureau that fines paid by truck operators for violations of State laws prescribing maximum weights, loads, and sizes of vehicles are deductible from gross income as ordinary and necessary business expenses under section 23(a) (1) (A) of the Internal Revenue Code.
>
> "That conclusion was based upon the understanding that the fines in question were paid in lieu of fees which would have been payable for permits to operate overloaded or overlength vehicles, and that such permits were generally granted by State highway authorities. The fines were, therefore, regarded as

more in the nature of tolls than penalties.

"Upon reconsideration of the question involved it appears that the premise on which the Bureau's conclusion was based was erroneous. It is therefore held that fines paid by truck operators for violations of State laws prescribing maximum weights, loads, and sizes of vehicles are penalties which are not deductible as ordinary and necessary business expenses under section 23(a) (1) (A) of the Internal Revenue Code. (See Burroughs Building Material Co. v. Commissioner [2 Cir.], 47 F.2d 178, Ct.D. 297, C. B. X-1, 397 (1931), and G. C. M. 11358, C. B. XII-1, 29 (1933).)"

Plaintiff is a common carrier of freight by motor vehicle operating in the states of Georgia, Alabama, Mississippi, Tennessee, Kentucky, Ohio, Indiana, Illinois, and Missouri, all of which have truck weight limitation laws which are similar in general character although they vary with respect to details and with respect to the maximum weight limitations imposed. For the years 1951 through 1953, plaintiff paid various fines imposed upon it because of its violations of such laws, and in its income tax returns for those years, deducted the amounts of the fines from gross income as ordinary and necessary business expenses under the provisions of Section 23(a) (1) (A) of the Internal Revenue Code. Its returns for those years, having been audited and the deductions disallowed by the Commissioner consistently with his ruling of November 30, 1950, the plaintiff paid the resulting additional income and excess profits taxes for the years involved and instituted the present action for their recovery.

The theory of the plaintiff is that the weight laws of the states in which it operates are so restrictive in character and have such variations in permissible weight limitations that it is practically impossible to operate the plaintiff's motor carrier business without incurring the penalties imposed, notwithstanding good faith efforts upon its part to comply with the weight regulations. It is insisted that the plaintiff has carried the burden of proof to show that its violations of the weight laws were neither wilful nor negligent and that the fines were incurred despite all reasonable efforts and precautions on its part to comply. On the basis of this reasoning, it is insisted that the question is controlled by such cases as Jerry Rossman Corporation v. Commissioner, 2 Cir., 175 F.2d 711; National Brass Works v. Commissioner, 9 Cir., 182 F.2d 526, 20 A.L.R. 590; and Commissioner v. Pacific Mills, 1 Cir., 207 F.2d 177, in which it was ruled that overcharges under the Emergency Price Control Act of 1942 which were neither wilful nor the result of failure to take practicable precautions were deductible as ordinary and necessary business expenses within the meaning of the Internal Revenue Code.

The defendant denies that the plaintiff has carried the burden of showing that its violations were neither wilful nor the result of failure to exercise due care or to take proper precautions, and insists, in any event, that the exactions under the weight limitation laws which the plaintiff was required to pay, constituted "penalties", or were punitive in nature, and that to allow them as deductions would frustrate the clearly defined policy of state laws within the doctrine of Great Northern Ry. Co. v. Commissioner, 8 Cir., 40 F.2d 372; Chicago, R. I. & P. Ry. Co. v. Commissioner, 7 Cir., 47 F.2d 990; Burroughs Bldg. Material Co. v. Commissioner, 2 Cir., 47 F.2d 178, Commissioner v. Longhorn Portland Cement Co., 5 Cir., 148 F.2d 276, and other decisions of like import.

It appears that the fines paid by the plaintiff for the taxable years resulted in large measure, probably in the vast majority of instances, because one or more axles of the vehicle involved carried weight in excess of the per axle limitation imposed by the various states, although in these instances the vehicle with its load of freight was within the

overall weight limitations. The proof shows that such violations usually occurred because of a shifting of the freight within the vehicle during transit.

In other instances, the proof suggests that violations occurred when the plaintiff picked up freight in small communities or from business concerns located on the open highways and loaded its vehicles in reliance upon the weight of the load as shown on the bill of lading which was prepared by the shipper, there being no opportunity to weigh the shipments until they arrived at a major terminal point. In still other cases, the violations resulted when it became necessary for the plaintiff to substitute a tractor of heavier weight after a breakdown en route because a tractor of similar weight was not at that time available. The plaintiff also introduced evidence to the effect that other freight haulers regularly pay fines under the weight limitation laws and it is argued from the entire record that the situation is such that the plaintiff's business cannot be operated on a practical basis without necessarily incurring the fines and penalties imposed by the law.

On the other hand, it is argued for the defendant that many other transportation companies are able to operate within the weight limitations, and it is insisted that by reasonable efforts the plaintiff would find no difficulty in avoiding violations, for example, by improving its methods of loading and packing the freight within the vehicle to avoid shifting in transit, by closer supervision of its operations, and by more careful inspection and adjustment of its weighing facilities.

In the view which the Court takes of the case, it is not necessary to determine whether the plaintiff did all which should reasonably be required of it as a prudent operator to comply with the weight limitations involved. Assuming that it took every precaution that could fairly be demanded consistent with a practical operation of its business, and assuming further that it did not act with wilful intent, the Court is of the opinion that to allow the claimed deductions from gross income for the taxable years would nevertheless frustrate the clearly defined policies of the applicable state weight limitation laws.

There can be no doubt that the underlying policy of the laws under which the fines were paid is not only to protect the highways of the state but also to protect the persons using them. Violations of the statutes are punishable by the imposition of a fine which is penal in character. No distinction is made in the statutes between an innocent or non-negligent violation, on the one hand, and one which is either wilful or due to a negligent failure to take adequate precautions, on the other hand. It was evidently considered that the purposes of the statutes could be accomplished more effectively by treating all violators alike. This thought is borne out by the provisions commonly found in statutes of this character that the Commissioner of Highways, or other proper authority, shall have discretionary power to grant special permits for freight movements in excess of the prescribed weight limitations, the inference being that, in the absence of such special permit, neither hardship nor good faith shall constitute a defense to a violation.

There are a number of cases holding that statutory penalties are not deductible from gross income as ordinary business expenses. The reason for this doctrine was succinctly stated in Commissioner of Internal Revenue v. Longhorn Portland Cement Co., 5 Cir., 148 F.2d 276, 277, in which deductibility was denied of sums paid by the taxpayer in satisfaction of statutory penalties incurred for violations of state antitrust laws:

> "* * * that the penalty is a punishment inflicted by the state upon those who commit acts violative of the fixed public policy of the sovereign, wherefore to permit the violator to gain a tax advantage through deducting the amount of the penalty as a business expense, and

thus to mitigate the degree of his punishment, would frustrate the purpose and effectiveness of that public policy."

Upon like reasoning deductions have been denied for fines and costs paid for violations of state laws relating to price fixing, Burroughs Bldg. Material Co. v. Commissioner, supra; and for sums paid by railroads for violations of the federal safety appliance laws. Chicago, R. I. & P. Ry. Co. v. Commissioner, supra; and Great Northern Ry. Co. v. Commissioner, supra.

But the soundness of the rule which would deny deductibility to all statutory penalties, or which would make the punitive character of the exaction an inflexible criterion, has been seriously questioned in later cases, particularly the case of Jerry Rossman Corp. v. Commissioner, supra. In that case [175 F.2d 713] Judge Hand pointed out that "there are 'penalties' and 'penalties,'" and ruled that the real test in the case of a penalty, as in the case of any other exaction, is whether its allowance as a deduction would frustrate the sharply defined policy of the statute, the question being decided in every case ad hoc. Applying this rule, the court found, as other courts have done in similar cases, that the allowance as a deduction of an innocent and non-negligent overcharge under the Emergency Price Control Act of 1942 did not frustrate the policy of that particular Act.

It is significant to note that Judge Hand held in the Rossman case that the overcharge under the Emergency Price Control Act was not a penalty, although he went further and ruled hypothetically that if it should be regarded as penal in nature, its allowance as a deduction did not frustrate the policy of the Act. It is clear from the opinion in the case that this result was reached because the court found that the Administrator, in applying the Act, had adopted the policy of making a distinction between innocent violators and those who had violated the Act because of wilfulness or a failure to take practicable precautions. Accordingly, the court found that where the Administrator had accepted the overcharge as sufficient without requiring the payment of treble damages, such acceptance was evidence of the fact that he regarded the overcharge as having been made innocently, with the result that no policy of the Act was frustrated.

The policy which had been pursued by the Administrator was incorporated into the Act itself by the 1944 amendment of Section 205(e), and the other OPA cases, subsequent to the Rossman case, were decided on the basis of the amendment. Thus, in the case of Commissioner v. Pacific Mills, supra, the question before the court was whether a payment to the Office of Price Administration in settlement of claims for overcharges was deductible as an ordinary and necessary business expense under Section 23(a) (1) (A) of the Internal Revenue Code. In holding that the overcharge was deductible, the court found that its allowance as a deduction would not frustrate the Act. The reasoning of the court is clearly indicated by the following excerpt from its opinion, 207 F.2d 177, 182:

"It is clearly evident from the wording of the amended statute itself, as well as from the legislative history of the amendatory act, that the fundamental policy of the act as amended was to draw a sharp line of distinction between innocent violators on the one hand, and those who had either violated the act wilfully, or else had failed to take practicable precautions to comply, on the other. To this end violators were subjected by § 205(e) of the amended act to payment of no more than their overcharges for the preceding year, or $25, whichever was greater, when they were able to prove that their violation was neither wilful nor the result of their failure to take practicable precautions against the occurrence of their violation. But violators who could not prove both their lack of wilfulness and that they had taken practicable precau-

tions to comply were subjected in the court's discretion to the payment of up to three times the amount of their overcharges for the preceding year or else to not less than $25 nor more than $50, whichever sum should be the greater. Payment in either event was to be to the purchaser provided he sued within the time limited therefor in the act, unless he purchased the commodity involved for use or consumption in his trade or business, for in that event, presumably, the first buyer had passed the overcharge on to those who had in turn purchased from him and it would be inequitable for him to recover and impractical to find those who had actually suffered from the overcharge. But, to prevent a violator in either category from wholly escaping the consequences of his violation, the section provided for payment to the Administrator whenever a purchaser for any reason was not entitled to sue. From these provisions it seems clear that the policy of the statute was not to punish violators who could prove that their violation was neither wilful nor the result of failure to take practicable precautions, but only to make them give up the proceeds of their violation, either as restitution to the buyer or, to prevent the violator's unjust enrichment, to the Administrator. But, as to violators who were unable to prove that their violation was neither wilful nor the result of failure to take practicable precautions it was the policy of the statute to require payment not only of the amount of the recoverable overcharges, but up to three times that amount in the discretion of the court. Thus, assuming that to allow a violator who was unable to prove that his violation was neither wilful nor the result of his failure to take practicable precautions, (one whom we may call for convenience a culpable violator) to deduct a payment such as the one under consideration

would indeed frustrate the clearly defined policy of the act, National Brass Works v. Commissioner, 9 Cir., 1953, 205 F.2d 104, the question arises as to whether Pacific Mills was such a violator or not, for if it was not, no statutory policy would be violated by permitting it to deduct its payment to the Administrator. Jerry Rossman Corp. v. Commissioner, 2 Cir., 1949, 175 F.2d 711; National Brass Works v. Commissioner, 9 Cir., 1950, 182 F.2d 526; Hershey Creamery Co. v. United States, 1952, 101 F.Supp. 877, 122 Ct.Cl. 423."

Accordingly, in the OPA cases there was statutory authority for a distinction between innocent and wilful violators, and since the Act itself made the distinction, it was possible to find that the allowance of an innocent and non-negligent overcharge as a deduction would not in any way impair or frustrate the policy of the Act. But the policy of the state weight limitation laws under consideration is to place all violators on the same basis without recognition of degrees or character of guilt. This being true, it would clearly frustrate the policy of the statutes if the distinction should be made by a court in applying the provisions of Section 23(a) (1) (A) of the Internal Revenue Code. To the extent that the deductions should be allowed because of innocence or due care the taxpayer would be relieved of the consequences of his violation, although the state law itself made no such distinction.

The plaintiff also questions the disallowance by the Commissioner of sums paid by the plaintiff for the taxable years on account of fines for traffic violations, but the Court is of the opinion that plaintiff has failed to carry the burden of proof to show that the allowance of these sums would not frustrate the policy of state or municipal laws. The proof does not clearly show the character of the particular laws involved or the circumstances under which the fines were levied and paid.

Another item involves fines paid under a Kentucky statute which required that motor vehicles be equipped with certain mechanical signal devices to give warning when the vehicle was to make a turn. It is shown that the statute was later construed as not requiring the mechanical device if the truck driver gave a hand signal of his intention to make a turn; and it is a fair conclusion from the record that the fines were levied not because of failure to give a signal at any particular intersection or at any particular time, but rather on account of the failure of the vehicle to have the necessary equipment. This being true, the Court feels that the allowance of these fines as deductions would not frustrate any clearly defined policy of the state statute and consequently that the plaintiff was entitled to deduct them from gross income for the particular years involved.

A judgment will be submitted in conformity with this memorandum and either party may, if desired, submit suggestions for additional findings of fact or conclusions of law.