399 So.2d 1098 (1981)
Toby HYMAN, Appellant,
v.
STATE of Florida, DEPARTMENT OF BUSINESS REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Appellee.
No. 80-1969.
District Court of Appeal of Florida, Third District.
June 23, 1981.
*1099 Levine & Green and Bruce David Green, Fort Lauderdale, Wolfson, Appel & Brown, Miami, for appellant.
Mary Jo M. Gallay and David Maloney, Tallahassee, for appellee.
Before SCHWARTZ and NESBITT, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
SCHWARTZ, Judge.
The appellant Hyman is the owner of a horse named Classy State which won the seventh race at Calder Race Course on October 28, 1978. Almost a year later, on October 23, 1979, he received an ex parte order of the Division of Pari-Mutuel Wagering which for the first time informed him of its allegation that Classy State had run under the influence of a drug. On this basis, the division, pursuant to its then-existing Rule 7E-1.06(13), Florida Administrative Code, the so-called "purse redistribution rule," sought to require Hyman to return the winner's purse of $5,400 to Calder. Hyman requested a hearing, which was conducted by and before the director of the division on April 23, 1980. 170 days later, on October 10, 1980, he rendered a final order finding that the horse had indeed been drugged and ordering the refund of the purse. Hyman appeals.
It is undisputed that the 170 day post-hearing delay before the rendition of the final order, which is neither explained nor even sought to be excused, was in clear violation of the terms of Section 120.59(1)(a), Florida Statutes (1979), which provides:
120.59 ORDERS. 
(1) The final order in a proceeding which affects substantial interests shall be in writing or stated in the record and include findings of fact and conclusions of law separately stated, and it shall be rendered within 90 days:
(a) After the hearing is concluded, if conducted by the agency.[1] [emphasis supplied]
Because we hold that a violation of this mandatory requirement per se renders unenforceable an agency order in a proceeding in which the agency is the protagonist, the order below is reversed.
There is no question either of the purpose or the meaning of the statute in question. It was obviously designed to keep within reasonable bounds the delay in the adjudication of rights and privileges which has infected legal proceedings in general, and, as a matter of common and often-commented-upon notoriety, administrative ones in particular. See 1 K. Davis, Administrative Law Treatise § 8.08 (1958). And, in the most mandatory expression available, Section 120.59(1) unequivocally states that the time limits it contains "shall" be observed. See Tascano v. State, 393 So.2d 540 (Fla. 1980). Notwithstanding the clarity which thus surrounds the statute, sharply *1100 differing views have been expressed as to the consequences of an agency violation of its terms. In Financial Marketing Group, Inc. v. State, Department of Banking and Finance, Division of Securities, 352 So.2d 524 (Fla.3d DCA 1977), this court indicated, in language which is admittedly dicta but which is also unmistakable in tone, that it strongly inclined to the view that an unexcused and unwaived violation of Section 120.59(1) would in and of itself result in reversal. At 352 So.2d 525, it was said:
As to the first alleged error, we agree that the language of the statute is mandatory and the respondent should have rendered its final order within 90 days after the recommended order was submitted by the hearings examiner. The statute does not provide a penalty for violation of this section, and the petitioners urge that the penalty should be that the licenses, as required by the petitioners, should issue. We certainly agree that the State agencies should follow mandates of the Legislature. We further observe that the regulatory agencies should not frustrate a citizen's attempt to secure a license to pursue a vocation or profession by inaction. In there were no other basis to reverse the agency's action under review, we might adopt the penalty suggested by the petitioners and require the issuance of the licenses because of the failure of the respondent to follow the mandatory provisions of Section 120.59, Florida Statutes.
Subsequently, however, the first district took quite another tack in G & B of Jacksonville, Inc. v. State, Department of Business Regulation, Division of Beverage, 362 So.2d 951 (Fla. 1st DCA 1978), appeal dismissed, 372 So.2d 468 (Fla. 1979). While paying lip service to the mandatory nature of the statute, G & B held that a departure from Section 120.59(a) would not cause reversal unless the delay resulted in an impairment of "either the fairness of the proceedings or the correctness of the action" as provided by Section 120.68(8), Fla. Stat. (1979).[2] While we think it clear that no such showing has been made in this case,[3] we cannot agree with this approach to the issue before us. In the first place, the violation of the express statutory command was, in our view, far more than the "error in procedure or a failure to follow prescribed procedure" referred to in Section 120.68(8). The interest in the timely disposition of actions which is expressed in Section 120.59(1), and is reflected in various other legal contexts, see, e.g., Fla.R.Jud. Admin. 2.050(f), Fla.R.Crim.P. 3.191, is certainly of sufficient independent significance to justify enforcement by the courts even if the fairness of the proceedings[4] or the correctness of the result is not otherwise implicated. More important, the G & B rule *1101 does not effect, in any meaningful way, the clearly expressed legislative intent to eliminate the mischief created by delay beyond the statutory period.[5] See Fla.Jur. Statutes §§ 77, 106 (1974). Unless Section 120.59(1) is enforced according to its terms in a prophylactic manner and with some adverse consequence to the agency which inexcusably ignores it, its command will become a meaningless hortatory homily which may be ignored with impunity, as it was in this very case. In this connection, we reject the statement in G & B at 362 So.2d 955 that
[i]t hardly seems appropriate to interpret the rule differently depending upon whether the parties are an agency and a private citizen or whether conflicting interests of multiple private parties are involved. For example, what would be the consequences of a violation of the 90-day rule were the Public Employees Relations Commission to enter an untimely order in a dispute between an employer and a labor union?[6]
It seems clear that this distinction is a significant, indeed, a decisive one. While it would be unjust to visit an agency's derelictions upon contending private parties who appear before it in its quasi-judicial capacity,[7] it is entirely appropriate to apply the statute, as it were, against the agency when, as here (and in G & B) it acts also as a quasi-executive in the enforcement of the regulatory laws within its jurisdiction. In such a case we know of no better way  in fact, of no other way  to serve the legislative intent than to put the agency at the certain risk of losing its own case if it fails to comply.
The two agency-vs.-private parties cases which have been decided since G & B are in accordance with the per se rule we foreshadowed in Financial Marketing and expressly apply here. The first district in City of Panama City v. PERC, 364 So.2d 109 (Fla. 1st DCA 1978), and the second district in Pinellas County v. PERC, 379 So.2d 985 (Fla. 2d DCA 1980) each reversed agency action solely because of a violation of Section 120.59(1), even though both opinions show  and Judge Smith's dissent in City of Panama City specifically points out  that there was no prejudice or other adverse effect which resulted from the delay. While we may dispute the precise mode of reasoning employed by these decisions, see note 5, supra, they lend clear support for our present holding.
In sum, we consider that the issue is controlled not, as G & B suggests, by Section 120.68(8), but by Section 120.68(9).[8] In the light of our conclusion that the decision under review erroneously interprets Section 120.59(1) to permit the efficaciousness of an untimely decision and that a "correct interpretation [of the statute] compels" the granting of this relief, we are authorized by Section 120.68(9)(a) to set aside the order below with directions to dismiss the proceedings. We do.[9]
Reversed.
NOTES
[1] The entire subsection provides:

120.59 Orders. 
(1) The final order in a proceeding which affects substantial interests shall be in writing or stated in the record and include findings of fact and conclusions of law separately stated, and it shall be rendered within 90 days:
(a) After the hearing is concluded if conducted by the agency,
(b) After a recommended order is submitted to the agency and mailed to all parties, if the hearing is conducted by a hearing officer, or
(c) After the agency has received the written and oral material it has authorized to be submitted, if there has been no hearing. The 90-day period may be waived or extended with the consent of all parties.
[2] The court shall remand the case for further agency action if it finds that either the fairness of the proceedings or the correctness of the action may have been impaired by a material error in procedure or a failure to follow prescribed procedure. Failure of any agency to comply with s. 120.53 shall be presumed to be a material error in procedure."
[3] Hyman was surely not prejudiced by the delay; indeed, by being able to retain the proceeds and earn interest on them for a longer period, he was aided by it.
[4] City of Panama City v. PERC, 364 So.2d 109 (Fla. 1st DCA 1978) and Pinellas County v. PERC, 379 So.2d 985 (Fla. 2d DCA 1980), discussed infra, applied Section 120.68(8) to reverse untimely agency action violative of Section 120.59(1), apparently on the theory that the delay necessarily adversely affected the "fairness" of the proceedings. See, e.g., City of Panama City v. PERC, supra, at 364 So.2d 113. While we realize that the end result of this reasoning is the same as ours, we do not think that it can correctly be said that delay invariably reflects upon "fairness." We regard that term as referring to the evenhandedness and lack of bias or prejudice with which all proceedings must be and must be seen to be conducted. The fact is, however, that interminably delayed action may be entirely fair, and that instant action may be completely the opposite. The reasons for expeditiously concluding and for fairly conducting proceedings are both of vital importance, but they are different reasons. We prefer to base our decision on the separate, statutorily-required demand that administrative justice not be delayed, rather than upon the roundabout and intellectually unsatisfactory method of assuming that such delay ipso facto results in unfairness.
[5] We observe that if the legislature intended the G & B result, it would have simply required decisions "within a reasonable time" after hearing. The G & B decision effectively reads out of the statute the specific 90-day provision which was chosen instead.
[6] In City of Panama City v. PERC, 363 So.2d 135 (Fla. 1st DCA 1978), the court answered its own question by concluding  correctly, as we view it, see note 6, infra  that reversal was not required if the delay did not impair the fairness or correctness of PERC's disposition of the case between the two disputing parties.
[7] As was true in City of Panama City v. PERC, supra, note 6, and the rate case of Lomelo v. Mavo, 204 So.2d 550 (Fla. 1st DCA 1967), cited in G & B.
[8] If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:
(a) Set aside or modify the agency action, or
(b) Remand the case to the agency for further action under a correct interpretation of the provision of law."
[9] This conclusion makes it unnecessary to consider the other grounds advanced for reversal, including the very substantial one that, at the time in question, the "purse redistribution rule" was invalid as providing for the imposition of a penalty by an administrative agency without a then-existing statutory authorization, contrary to Article I, Section 18, Florida Constitution (1968). Compare the later-enacted Section 550.241(3)(a), Fla. Stat. (1980 Supp.)