431 So.2d 603 (1983)
Toby HYMAN, Appellant,
v.
STATE of Florida, DEPARTMENT OF BUSINESS REGULATION, DIVISION OF PARI-MUTUEL WAGERING, Appellee.
No. 80-1969.
District Court of Appeal of Florida, Third District.
February 1, 1983.
*604 Levine & Green and Bruce David Green, Fort Lauderdale, for appellant.
David M. Maloney, Tallahassee and Elliot Henslovitz, Miami, for appellee.
Before SCHWARTZ, C.J., and HUBBART and NESBITT, JJ.
SCHWARTZ, Chief Judge.
This case is before us, for consideration of the appellant Hyman's remaining contentions, on remand from the supreme court upon its quashal of our conclusion that the Pari-Mutuel Wagering Division's violation of Sec. 120.59(1), Fla. Stat. (1979) required reversal. Department of Business Regulation, Division of Pari-Mutuel Wagering v. Hyman, 417 So.2d 671 (Fla. 1982), quashing, Hyman v. State, Department of Business Regulation, Division of Pari-Mutuel Wagering, 399 So.2d 1098 (Fla. 3d DCA 1981). We now reject those claims and therefore affirm the order under review.
The only point which requires discussion is the assertion that the purse redistribution rule, Fla. Admin. Code Rule 7E-1.06(13),[1] which was applied below, is a "penalty" which, because it was not then authorized by the legislature,[2] is invalidated by Article I, Section 18 of the Florida Constitution which states:
No administrative agency shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law.[3]
See McFarlin v. State, Department of Business Regulation, Division of Pari-Mutuel Wagering, 405 So.2d 255 (Fla. 3d DCA 1981) (striking fine imposed pursuant to rule as contrary to Article I, Section 18). We do not agree.
Under the rule, the owner, however innocent,[4] of a drugged horse is required to return any purse to the track for repayment to the owners of the horses as they would have finished the race if the unfairly advantaged thoroughbred had not run. We *605 cannot consider that this process, which accomplishes the restitution of sums to individuals who should have received them in the first place from those who in fairness, should not, see 28 Fla.Jur. Restitution and Implied Contracts § 2 (1968); 66 Am.Jur.2d Restitution and Implied Contracts §§ 3, 11 (1973), imposes a "penalty" within the meaning of the constitutional proscription.
The over-ninety pages devoted to the word in 31A Words and Phrases "Penalty" (1957) give eloquent witness to the wisdom of Justice Cardozo's remark that "`[p]enalty' is a term of varying and uncertain meaning." Life and Casualty Ins. Co. v. McCray, 291 U.S. 566, 574, 54 S.Ct. 482, 486, 78 L.Ed. 987, 992 (1934). Of the innumerable factual-legal contexts in which it has been necessary to define the expression, however, we find the most helpful to be those which involve, as here, efforts undertaken by a governmental agency to right, as it were, a private wrong by requiring the disgorging of a benefit which has been unlawfully or unjustly secured. In Porter v. Montgomery, 163 F.2d 211 (3d Cir.1947), which involved measures for the enforcement of World War II price regulations, for example, the court, after noting the kaleidoscopic nature both of the "penalty" issue and the applicable cases, said:
In this welter of law it seems that the case at bar be decided only on common sense principles. A civil action is for damages if it is brought for the compensation of the injured individual. It is for a penalty if it seeks to obtain a sum of money for the state, an entity which has not suffered direct injury by reason of any prohibited action. In order to obtain damages the loss must flow out of the wrong and be its natural and proximate consequence. Smith v. Bolles, 132 U.S. 125, 130, 10 S.Ct. 39, [40] 33 L.Ed. 279. A penalty need have no causal connection with the wrong inflicted. In a penal statute the penalty is inflicted by a law for its violation. In the case at bar the sum sought to be recovered by the Administrator clearly is not intended for compensation whereby Montgomery should reimburse or compensate any person whom he injured by sales above ceiling price. The sum sought to be recovered is in the nature of an exaction, to be levied upon Montgomery or his heirs as a penalty to aid in the prevention of a repetition of an offense prohibited by the Act. [e.s.]
163 F.2d at 215. In this case, unlike that one, the rule is not designed to benefit the state, but only to secure a compensatory reimbursement of those owners whose horses should have been successful. The court made just this distinction in Woods v. Kern, 87 F. Supp. 383 (E.D.Pa. 1949), reversed on other grounds, 181 F.2d 499 (3d Cir.1950):
As far as the Expediter seeks to require the defendants to pay the overcharges into the Treasury of the United States, the action is one to recover or enforce a penalty: Porter v. Montgomery, 3 Cir., 1947, 163 F.2d 211 ...
The above requested relief is only an alternative remedy sought by the Expediter. His primary request is that the sum of the overcharges be paid to the former tenant. An action for such purpose is not one to recover a penalty: Porter v. Montgomery, supra. [e.s.]
87 F. Supp. at 384. See also, In re Shawsheen Dairy, 47 F. Supp. 494 (D.Mass. 1942) (claims by Agriculture Department against milk handler to recover fees due milk producers payable through department not "penalties").
These cases are in full accord with the authorities which more generally hold that a remedial provision designed to effect restitution rather than to punish and deter wrongdoing is not a penalty.[5]Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); United States ex rel. Marcus v. Hess, 317 U.S. 537, 551, 63 S.Ct. 379, 388, 87 L.Ed. 443, 453 (1943) ("... the chief purpose of the statutes here was to provide for restitution."); Hershey Creamery Co. v. United States, 122 Ct.Cl. 423, 101 F. Supp. 877, 883 (1952) (requiring repayment of inadvertent overcharges not penalty, but "remedial *606 measure to prevent innocent and unintentional violators from profiting by their inadvertence."); McHugh v. Placid Oil Co., 206 La. 511, 19 So.2d 221 (1944). We find their reasoning directly applicable to the problem before us.[6]
The appellant's other contention, that the finding that his horse was in fact drugged is unsupported by competent evidence, is without merit.
Affirmed.
NOTES
[1] The rule provided:

The owner or owners of a horse so found to have received such administration [of drugs] shall be denied, or shall promptly return, any portion of the purse or sweepstakes, and any trophy in such race, and the same shall be distributed as in the case of a disqualification. If a horse shall be disqualified in a race because of the infraction of this Rule, the eligibility of other horses which ran in such race and which have started in a subsequent race before announcement of such disqualification shall not be in any way affected.
[2] The authority was only subsequently specifically authorized by the enactment of Sec. 550.241(3)(a), Fla. Stat. (1981).
[3] The same issue was raised but not ruled upon in Hays v. State, Department of Business Regulation, Division of Pari-Mutuel Wagering, 418 So.2d 331 (Fla. 3d DCA 1982), because, unlike Hyman, the appellant did not timely challenge the order requiring redistribution.
[4] Hyman is conceded to have been unaware of the fact that his horse was drugged.
[5] Again, there was none involved here. See n. 4, supra.
[6] Hyman's primary reliance is on the statement in Baxter v. Florida Career Service Commission, 380 So.2d 1044 (Fla. 1st DCA 1980) that the term "sanction" includes a restitutional requirement. In Baxter, however, the court merely interpreted the latter word, as it appeared in an earlier opinion, in determining whether attorney's fees and costs should be assessed under Sec. 120.68(13)(a), Fla. Stat. (1979). Baxter is totally inapposite to the present issue.